**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CALIFORNIA PRO-LIFE COUNCIL, INC.,
      *Plaintiff-Appellant,*

v.

LIANE RANDOLPH, Chairman of the
Fair Political Practices
Commission; PHILIP BLAIR, FPP
Commissioner; SHERIDAN DOWNEY,
III, FPP Commissioner; EUGENE
HUGUENIN, FPP Commissioner;
PAMELA KARLAN, FPP
Commissioner; BILL LOCKYER,
Attorney General,
              *Defendants-Appellees.*

No. 05-15507

D.C. No.
CV-00-01698-FCD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
February 12, 2007—San Francisco, California

Filed November 14, 2007

Before: John T. Noonan, Ronald M. Gould, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rawlinson

14797

## COUNSEL

James Bopp, Jr. (briefed and argued), Richard E. Coleson (briefed), Terre Haute, Indiana, for the appellant.

Teri L. Block (argued), Luisa Menchaca (briefed), Lawrence T. Woodlock (briefed and argued), Fair Political Practices Commission General Counsel; Louis R. Mauro, Senior Assistant Attorney General, Catherine M. Van Aken, Supervising Deputy Attorney General, Robert E. Leidigh, Deputy Attorney General, Kathryn Gimple (briefed), Sacramento, California, for the appellees.

Trevor Potter, J. Gerald Hebert, Paul S. Ryan, Washington, D.C.; Daniel R. Ortiz, Charlottesville, Virginia, for amicus curiae Campaign Legal Center.

Rob McKenna, Attorney General, Nancy Krier, Senior Counsel, Olympia, Washington for amici curiae States of Washington, Arizona, Hawaii, Iowa, Montana, Nevada, New Mexico and Oregon.

## OPINION

RAWLINSON, Circuit Judge:

California Pro-Life Council, Inc. (CPLC) challenges certain provisions of California's Political Reform Act (PRA), including the PRA's definition of "contribution" and the recipient committee requirements imposed on a multi-purpose organization, such as CPLC. On cross-motions for summary judgment, the district court granted summary judgment in

favor of Appellees (collectively referred to as California) and denied CPLC's motion for summary judgment. Because strict scrutiny applies and CPLC conceded the existence of a compelling governmental interest in the disclosure of the information at issue, we focus on the narrow tailoring inquiry, concluding that the definition of contribution is narrowly tailored, and the additional recipient committee requirements are not.

## I.   BACKGROUND

CPLC, a non-profit corporation under 26 U.S.C. § 501(c)(4), is a nonpartisan, nonsectarian, educational organization dedicated to educating the public on abortion, infanticide, and euthanasia. CPLC is the state affiliate of the National Right to Life Committee (NRLC), one of the nation's most powerful lobbying and interests groups. According to CPLC, its major purpose is not the nomination or election of candidates or the passage or defeat of ballot measures, but rather to educate Californians regarding the value of life. In keeping with its expressed purpose, CPLC periodically generates mass mailings, ranging from 15,000 to in excess of 100,000 in number.

The purpose of the PRA is to inform voters of the identity of individuals and/or organizations who expend money in support of or in opposition to ballot measures. The information collected pursuant to PRA disclosure requirements is accessible to the public via the Secretary of State's website. In 2004, there were 18,243,899 documented hits on this site, in 2005 11,118,821 documented hits, and in 2006 20,049,141 documented hits.

CPLC filed a ten-count amended verified complaint for declaratory and injunctive relief, alleging that particular provisions of the PRA violate the First and Fourteenth Amendments. Because CPLC disseminated voter guides before the 1998 primary and general elections and the 2000 primary

election, expending, in excess of $1,000, it would be deemed a recipient committee under the Act. Although it would like to provide similar information to the general public in the future, as long as the PRA remains in effect, CPLC asserts that it will refrain, due to the requirements imposed upon a recipient committee and the consequent penalties for failure to comply.

Counts 1 (overbreadth — candidate communications), 2 (overbreadth — ballot measures), 3 (overbreadth — advocacy regarding candidates), 4 (overbreadth — advocacy regarding ballot measures), and 6 (facial challenge) were dismissed by the district court. Counts 5 (vagueness) and 10 (vagueness) were also dismissed to the extent that they were directed at regulation of communications involving candidates and mere discussion of ballot measure initiatives. The counts were not dismissed to the extent they were directed at express ballot measure advocacy. Thereafter, the parties stipulated to the dismissal without prejudice of counts 7 (major purpose), 8 (major purpose), and 9 (major purpose), *i.e.,* all claims relating to state regulation of groups as committees without regard to their major purpose.

In 2003, we remanded this case to the district court to "determine whether California's informational interest is sufficiently compelling to justify its regulation of groups like CPLC and, if so, whether the PRA regulations are closely tailored to advance this interest." *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1101 (9th Cir. 2003). Although we noted a lack of clarity regarding the appropriate level of scrutiny, we applied strict scrutiny. *Id.* at 1101 n.16.

Upon remand, the district court concluded that the regulatory scheme imposed on CPLC and groups like CPLC who engage in express ballot measure advocacy is the least restrictive means available for California to achieve its compelling interest in fully informing voters and preventing organizations

from disguising their involvement in express ballot measure advocacy. CPLC filed a timely appeal.

Although we agree with the district court that strict scrutiny applies and that the definition of contribution is narrowly tailored, we hold that the additional recipient committee requirements are not.

## II.  STANDARD OF REVIEW

"The district court's grant of summary judgment is reviewed de novo." *Qwest Communications, Inc. v. City of Berkeley*, 433 F.3d 1253, 1256 (9th Cir. 2006) (citation omitted). "We must determine, viewing the evidence in the light most favorable to . . . the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applies the substantive law." *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) (citation omitted).

## III.  DISCUSSION

### A.  For Purposes Of Summary Judgment, CPLC Cannot Rely On "Factual Presuppositions."

CPLC argued to the district court that "the factual framework for th[e] remand is that provided [by the panel's decision in *Getman*.]" This argument raised several issues: (1) whether CPLC was relieved of its duty to present evidence; (2) if not, whether CPLC presented sufficient admissible evidence to raise an issue of material fact; (3) if CPLC failed to present sufficient evidence, whether its failure to do so is fatal to its appeal; (4) whether a district court is bound by the remand instructions from an appellate court; and (5) in the context of a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure (FRCP), whether the district court was bound by the factual underpinnings of the remand order.

### 1. CPLC Was Not Relieved Of Its Duty To Present Evidence.

[1] Contrary to CPLC's position that it could rely on "factual presuppositions" of the prior panel decision, the *Getman* panel noted that "a more fully developed record" was needed to resolve the compelling interest and narrowly tailored inquiries. *See* 328 F.3d at 1107. The panel's decision in no way relieved CPLC of its duty to present evidence to support its summary judgment motion or to challenge California's motion.

### 2. CPLC Failed To Present Sufficient Admissible Evidence To Raise An Issue Of Material Fact.

CPLC contends that its amended verified complaint qualifies as an affidavit for summary judgment purposes.[1] We disagree.

[2] "[A] verified complaint may serve as an affidavit for purposes of summary judgment *if* [1] it is based on personal knowledge and if [2] it sets forth the requisite facts with specificity." *Moran v. Selig*, 447 F.3d 748, 760 n.16 (9th Cir. 2006) (citation omitted) (emphasis added). The verified complaint in this case was signed by Brian Johnston, the Executive Director of CPLC. During his deposition, Johnston's lack of personal knowledge regarding CPLC was apparent. A series of questions was asked regarding CPLC's PACs and Johnston responded that he did not know to nearly every inquiry. His knowledge regarding how CPLC funds are spent was also scant. As could be expected in view of Johnston's lack of personal knowledge, the verified complaint was impermissibly heavy on legal conclusions and light on "facts relevant to the summary judgment motion." *Lew v. Kona Hospital*, 754 F.2d 1420, 1424 (9th Cir. 1985), *as amended*.

---

[1]CPLC also submitted a "Supplemental Affidavit in Support of Plaintiff's Motion for Preliminary Injunction," detailing CPLC's prospective plans for the November 2000 election.

### 3. CPLC's Failure To Present Sufficient Evidence To Raise An Issue Of Material Fact Is Not Fatal To Its Appeal.

**[3]** Even though we conclude that CPLC failed to present sufficient admissible evidence in support of its motion for summary judgment or in opposition to California's motion for summary judgment to raise a material question of fact, this determination is not dispositive. We must still determine whether the undisputed facts entitle California to summary judgment as a matter of law. *See Tellis v. Godinez*, 5 F.3d 1314, 1316 (9th Cir. 1993). This leads us to an examination of the remand order.

### 4. A District Court Is Bound To Follow The Instructions Of An Appellate Court Upon Remand.

"A district court, on remand, has a duty to follow this court's instructions as to how the case is to proceed." *United States v. Montgomery*, 462 F.3d 1067, 1072 (9th Cir. 2006) (citation omitted). "[C]lear direction to the district court on how to proceed continues to be binding precedent . . ." *Operating Engineers Pension Trust v. Charles Minor Equip. Rental, Inc.*, 766 F.2d 1301, 1304 (9th Cir. 1985).

**[4]** The district court was bound by the *Getman* panel's instructions: "On remand, the district court should determine whether California's informational interest is sufficiently compelling to justify its regulation of groups like CPLC and, if so, whether the PRA regulations are closely tailored to advance this interest." *Getman*, 328 F.3d at 1101. The *Getman* panel described CPLC as a group "whose major purpose is not campaign advocacy, but who occasionally make[s] independent expenditures." *Id.* at 1101 n.21 (citation omitted).

### 5. In The Specific Context Of A FRCP 12(b)(6) Motion, No Factual Determinations Were Made That Would Bind The District Court On Remand.

In reviewing a motion to dismiss under FRCP 12(b)(6),[2] "we assume all facts alleged in the . . . Complaint are true . . ." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006) (citation omitted). Because of the assumption that all facts in the Complaint are true, there is no need for judicial factfinding. *See* FRCP 52(a) ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 . . ."). Indeed, the court is not "faced [with any] factual issue." *Adams v. United States*, 225 F.3d 787, 797 (9th Cir. 2001). As the *Getman* panel was not faced with any factual issues, its passing statement regarding CPLC's "major purpose" could not reasonably be construed as making a factual determination.[3]

**[5]** Therefore, although CPLC had a duty to present evidence, its failure to present relevant admissible evidence is not fatal to its appeal because we must still consider whether the undisputed facts entitle California to summary judgment as a matter of law. Moreover, because in a motion to dismiss under FRCP 12(b)(6), we assume all facts to be true, the district court was not bound by our passing statement regarding CPLC's "major purpose."

## B. Strict Scrutiny Applies In This Case.[4]

---

[2]*See Getman*, 328 F.3d at 1101 (reviewing "the district court's dismissal for failure to state a claim").

[3]In any event, the determination regarding CPLC's "major purpose" has no bearing on this case because: (1) the parties voluntarily stipulated to the dismissal of the major purpose claims, and (2) neither party disputes that CPLC is a multi-purpose organization.

[4]The Supreme Court's recent decision in *Federal Election Commission v. Wisconsin Right to Life, Inc. (WRL)*, 127 S. Ct. 2652 (2007), does not affect our treatment of this case. *WRL* concerned a corporation's "ability to engage in political speech." *Id.* at 2660. *WRL* did not undertake an analysis of statutory disclosure requirements.

This case was remanded to the district court for application of strict scrutiny to its analysis of the PRA. *See Getman*, 328 F.3d at 1101 n.16. Nonetheless, because *McConnell v. Federal Election Commission*, 540 U.S. 93 (2003), was decided subsequent to the *Getman* remand, the parties dispute the applicable standard.[5]

As noted, we are bound to apply strict scrutiny. *See Getman*, 328 F.3d at 1101 n.16 (selecting the strict scrutiny standard). Because neither the *McConnell* decision nor the Supreme Court's recent decision in *WRL*, 127 S. Ct. 2652, called into question the analysis reflected in *Federal Election Commission v. Massachusetts Citizens for Life, Inc. (MCFL)*, 479 U.S. 238, 252 (1986), upon which we relied in *Getman*,[6] we are not compelled to abandon the standard adopted in *Getman*. *See Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled . . . by the Supreme Court.") (footnote reference omitted).

---

[5]Two cases in this Circuit have discussed how *McConnell* may have changed the legal landscape. These cases have drawn a "distinction between direct regulation of the content of political speech and requiring the later reporting of the funding of speech . . ." *American Civil Liberties Union of Nevada v. Heller*, 378 F.3d 979, 987 (9th Cir. 2004) (applying strict scrutiny to the former and implying that "*McConnell* cases new light" on the latter); *see also Alaska Right to Life Committee v. Miles (ARLC)*, 441 F.3d 773, 788 (9th Cir. 2006) (concluding that "the Court [in *McConnell*] did not apply 'strict scrutiny' or require a 'compelling state interest[,]' " but nonetheless "assum[ing] without deciding that strict scrutiny applies to all of the challenged disclosure requirements") (citation omitted). We need not resolve any potential conflict because we are bound by the "law of the case" to apply strict scrutiny. *Minidoka Irrigation District v. U.S. Dept. of Interior*, 406 F.3d 567, 574 (9th Cir. 2005) ("[W]e are bound by the opinion of the prior panel as the law of the case.") (citation and internal quotation marks omitted).

[6]*See, e.g., McConnell*, 540 U.S. at 211 (referring to *MCFL* without criticism); *see also Getman*, 328 F.3d at 1101 (relying on *MCFL*'s application of strict scrutiny).

Applying strict scrutiny, California bears the burden of proving that the PRA provisions at issue are "(1) narrowly tailored, to serve (2) a compelling state interest." *Republican Party of Minnesota v. White*, 536 U.S. 765, 774-75 (2002) (citation omitted).[7]

## C.    California Has A Compelling Interest In Requiring Disclosure Of Contributions To Groups Who Seek To Influence Voters.

CPLC concedes that "California has a compelling interest in regulating true *contributions* (gifts to groups like CPLC that are made for the purpose of influencing voters . . .)." CPLC makes a distinction between "true contributions" and "mere donations," which CPLC contends are not made for the purpose of influencing voters. Citing to *McConnell*, 540 U.S. at 206, CPLC argues that for California "[t]o justify its required disclosure of mere donations, California had the burden of proving that donations are the 'functional equivalent' of contributions." However, CPLC's framing of the issue is unsupported by governing law.

[6] California seeks disclosure of "contributions" of $100 or more. *See* California Government Code (CGC) § 84211(f). Thus, the appropriate inquiry is whether the PRA's definition of "contributions" impermissibly classifies donations that were not made for the purpose of influencing voters as "contributions."

[7] CPLC's "functional equivalent" argument is unavailing. California does not attempt to extend the coverage of the dis-

---

[7]We note that for purposes of the narrow tailoring analysis, the district court adopted the framework outlined by the Second Circuit in *Landell v. Sorrell*, 382 F.3d 91 (2d Cir. 2004), *as amended*. Because there are "cases on point from this circuit," we need not consider opinions from other circuits. *Roy v. Lampert*, 465 F.3d 964, 971 (9th Cir. 2006), *as amended*; *see, e.g., Getman*, 328 F.3d at 1104 & n.16 (discussing narrow tailoring).

closure requirements to donations unless the donee expends funds to influence voters. Therefore, California does not have to establish that donations are the functional equivalent of "contributions." *Cf. McConnell*, 540 U.S. at 205-06 (concluding that issue advocacy that is the "functional equivalent" of express advocacy may fall within the statute's provisions); *see also WRL*, 127 S. Ct. at 2659, 2664 (2007) (addressing the issue of "whether the speech at issue is the 'functional equivalent' of speech expressly advocating the election or defeat of a candidate for federal office, or instead a genuine issue ad[ ]" and reiterating the holding in *McConnell*) (citation and alteration omitted). Rather, we must determine whether the statute is narrowly tailored to advance California's compelling interest in disclosure of those groups who seek to influence voters.[8, 9]

(Text continued on page 14812)

---

[8]We note that in the context of disclosure requirements, the government's interest in providing the electorate with information related to election and ballot issues is well-established. *See, e.g., McConnell*, 540 U.S. at 196; *see also Buckley v. Valeo*, 424 U.S. 1, 66 (1976); *Goland v. United States*, 903 F.2d 1247, 1261 (9th Cir. 1990); *ARLC*, 441 F.3d at 791.

Despite the fact that CPLC conceded that California has a compelling informational interest, California also presented persuasive evidence demonstrating the importance of providing the electorate with pertinent information. Researcher David Binder conducted a telephone survey from June 23-26, 2001. "The goals of this project were to determine objectively, using established methods of scientific public opinion research, what sources of information regarding candidates and ballot measures are important to California voters." According to Binder's findings, "[m]ore than seven of ten California voters (71%) state that it is important to know the identity of the source and amount of campaign contributions to the ballot measure by both supporters and opponents, including unions, businesses or other interest groups." "Fifty seven percent (57%) of California voters state that endorsements by interest groups, politicians or celebrities are important in helping them make up their own mind on how to vote on ballot measures." "A majority of California voters (57%) state they would be less likely to vote for a proposition to build senior citizen housing if the proposition was supported by a well-known and respected senior activist who was discovered to have been paid by developers to promote the proposition. Only one-third (34%) stated that this information would not make any difference in their vote."

Professor Bruce Cain, a Professor of Political Science at the University of California, Berkeley, and Director of the Institute of Governmental

Studies, added that "there are several compelling reasons for such a requirement. Foremost among them is the fact that the names groups give themselves for disclosure purposes can be, and frequently are, ambiguous or misleading."

Sandy Harrison, a former journalist for radio stations and newspapers and since 1995, a press secretary and communications director for the president pro tem of the state Senate, the state Department of Finance, and the state Controller, emphasizes this point in her affidavit:

> A prime example of this was Proposition 188 on the November 1994 ballot, an effort to overturn California's recently enacted workplace smoking ban. Supporters falsely portrayed the measure as a grassroots effort by small businesses. By reviewing the campaign finance report, I was able to report to readers that it was not the work of small businesses, but actually giant tobacco Companies . . . . If the campaign finance report had not been public, I could not have substantiated or conveyed this important information to the readers, and they may never have learned the truth about who was really behind this proposition.

According to Stephen K. Hopcraft, the President and co-owner of "a full-service public relations firm specializing in grass roots and public education campaigns[,]" "the information gleaned from . . . disclosure reports is *absolutely critical* to assist news media and voters in sorting through the claims and counter-claims in a ballot measure campaign . . . . With all the hyperbole in campaigning, the financial backing of each side gives voters a yardstick to measure the truth of the assertions." Indeed, CPLC admitted that "[b]ecause political operators in many states are able to avoid campaign finance disclosure requirements, citizens are likely to be uninformed and unaware of the tens of millions of dollars that are spent on ballot measure campaigns by veiled political actors (VPAs) . . ."

[9]Although we are satisfied that California has a compelling interest in disclosure of pertinent information to the electorate, we do not completely adopt the district court's articulation of the compelling governmental interest. The district court concluded that California had a compelling state interest in both "[1] informing the electorate regarding contributions and expenditures made to pass or defeat ballot measure initiatives and[,] [2] in maintaining the integrity of its electoral and legislative processes preventing veiled political actors from concealing their involvement in the political process." The latter interest implicates the notion of deterring corruption, which has been rejected as a constitutionally sufficient interest

**D.   CPLC's Challenge To The Narrow Tailoring Of The Statute Is Valid As To The PAC-Like Reporting Requirements But Not As To The Other Provisions.**

CPLC posits that (1) California's presumption, described in California Code of Regulations, tit. 2 (CCR) § 18215(b)(1), "transmogrifies" donations into contributions and thus is not narrowly tailored to California's compelling interest in disclosure of information to the electorate;[10] and, (2) the resulting recipient committee requirements are not narrowly tailored.[11]

---

in the ballot measure disclosure context. *See, e.g., Montana Chamber of Commerce v. Argenbright*, 226 F.3d 1049, 1056 (9th Cir. 2000) ("Referenda are held on issues, not candidates for public office. The risk of corruption perceived in cases involving candidate elections simply is not present in a popular vote on a public issue."); *see also First National Bank of Boston v. Bellotti*, 435 U.S. 765, 790 (1978) ("The risk of corruption perceived in cases involving candidate elections, simply is not present in a popular vote on a public issue.") (citation and footnote references omitted).

[10]CPLC refers to the presumption contained in CCR § 18215(b) throughout its brief as a transmogrifying presumption. "Transmogrify" means "[t]o change into a different shape or form, especially one that is fantastic or bizarre." *The American Heritage College Dictionary* 1347 (3d ed. 2000).

[11]Citing to *Buckley*, 424 U.S. at 79 and *MCFL*, 479 U.S. at 252 n.6, CPLC maintains that because its major purpose is not campaign advocacy, it was improper for California to "treat [CPLC] like a PAC." Having determined that "the major purpose test is inapplicable," the district court did not reach the issue of "whether CPLC's major purpose is campaign activity." In any event, in addition to the fact that the parties stipulated to dismissal of the "major purpose" claims, this Court has held that irrespective of the major purpose of an organization, disclosure requirements may be imposed. *See, e.g., ARLC*, 441 F.3d at 786. CPLC's argument to the contrary is unpersuasive.

CPLC's supplemental citation to the recent Tenth Circuit case of *Colorado Right to Life Committee, Inc. v. Coffman* (*CRLC*), Nos. 05-1519, 05-1538, 2007 WL 2372368 (10th Cir. Aug. 21, 2007), does not persuade us otherwise. Not only are we unable to stray from our prior precedent, *see Hulteen v. AT&T*, 498 F.3d 1001, 1010 (9th Cir. 2007) (en banc), but the Tenth Circuit expressly limited its holding to the confines of "restrictions on expenditures." *See CRLC*, 2007 WL 2372368 at *11.

### 1. The PRA Provisions Contain Three Alternatives To Determine If Disclosure Requirements Are Triggered.[12]

The PRA's stated purpose is to ensure that "[r]eceipts and expenditures in election campaigns [are] fully and truthfully disclosed in order that the voters may be fully informed and improper practices may be inhibited." CGC § 81002(a).

Pursuant to CGC § 82013, a committee subject to disclosure requirements may be formed in three ways. First, a recipient committee forms if "any person or combination of persons . . . receives contributions totaling $1,000 or more in a calendar year." § 82013(a). Second, an independent expenditure committee forms if "any person or combination of persons . . . makes independent expenditures totaling $1,000 or more in a calendar year . . ." § 82013(b). Third, a major donor committee forms if "any person or combination of persons . . . makes contributions totaling $10,000 or more in a calendar year to or at the behest of candidates or committees." § 82013(c).

Pursuant to CGC § 82013:

> "Independent expenditure" means an expenditure made by any person in connection with a communication which expressly advocates the election or defeat of a clearly identified candidate or the qualification, passage or defeat of a clearly identified measure, or taken as a whole and in context, unambiguously urges a particular result in an election but which is not made to or at the behest of the affected candidate or committee.

---

[12]Although the focus on this appeal is on the recipient committee provisions, it is useful to peruse the other provisions for context.

Under CGC § 82015(a), "contribution" is a term of art which "means a payment, a forgiveness of a loan, a payment of a loan by a third party, or an enforceable promise to make a payment except to the extent that full and adequate consideration is received, *unless it is clear* from the surrounding circumstances that it is not *made for political purposes*." (emphases added). CCR § 18215(a) defines a "contribution" as "any payment *made for political purposes* for which full and adequate consideration is not made to the donor . . ."

**[8]** The PRA considers a payment to be "made for political purposes if it is . . . [f]or the purpose of influencing or attempting to influence the action of the voters for or against the nomination or election of a candidate or candidates, or the qualification or passage of any measure . . ." CCR § 18215(a)(1). CCR § 18215(b)(1) further defines "contribution" to include:

> Any payment made to a person or organization other than a candidate or committee, when, at the time of making the payment, the donor *knows or has reason to know* that the payment, or funds with which the payment will be commingled, will be used to make contributions or expenditures. If the donor *knows or has reason to know* that only part of the payment will be used to make contributions or expenditures, the payment shall be apportioned on *a reasonable basis* in order to determine the amount of the contribution.

(emphases added). This section further presumes that:

> the donor does *not have reason to know* that all or part of the payment will be used to make expenditures or contributions, unless the person or organization has made expenditures or contributions of at least one thousand dollars ($1,000) in the aggregate during the calendar year in which the payment

occurs, or any of the immediately preceding four calendar years.

*Id.*

[9] This presumption contained in CCR § 18215(b)(1) is known as the "one bite (or first bite) of the apple" rule. According to the California Fair Political Practices Commission, once an organization makes expenditures or contributions of at least $1,000, this is considered the "first bite." California Fair Political Practices Commission, Diane M. Fishburn Advice Letter No. A-06-075 (Fishburn Advice Letter) at *4 (June 9, 2006). "For the remainder of the year [after the $1,000 or more contribution and/or expenditure] and the following four years, any donor to the organization would presumably know or have reason to know that funds with which the donations will be commingled may be used for political purposes." *Id.* Thus,

> [i]f a *subsequent* contribution or expenditure of $1,000 or more is made by the organization during the applicable period (current year plus 4 following years), the organization becomes a recipient committee, and any donations or membership fees it receives *after* the "first bite" contribution or expenditure of $1,000 or more has been taken, are deemed to have been received for political purposes, and the sources of any funds used by the organizations to make those contributions would [be] subject to disclosure on a reasonably apportioned basis.

*Id.* (emphasis added).[13]

Within ten days after a person or group of persons qualifies

---

[13]CPLC refers to the current year plus the four previous years as the "lookback period" and refers to the "time from the second expenditure back to the beginning of the calendar year" as the "reachback period."

as a recipient committee, a statement of organization must be filed. CGC § 84101(a); *see also id.*, § 84102 (describing the contents of the statement of organization). The committee must have a treasurer. *Id.*, § 84100. "It shall be the duty of each candidate, treasurer, and elected officer to maintain detailed accounts, records, bills, and receipts necessary to prepare campaign statements, to establish that campaign statements were properly filed, and to otherwise comply with the provisions of this chapter." *Id.*, § 84104. A recipient committee must file semi-annual statements. *Id.*, § 84200(a).

The required contents of a campaign statement are listed in § 84211(f). In pertinent part, subsection (f) requires:

> If the cumulative amount of contributions (including loans) received from a person is one hundred dollars ($100) or more and a contribution or loan has been received from that person during the period covered by the campaign statement, all of the following [must be reported]:
>
> (1) His or her full name.
>
> (2) His or her street address.
>
> (3) His or her occupation.
>
> (4) The name of his or her employer, or if self-employed, the name of the business.
>
> (5) The date and amount received for each contribution received during the period covered by the campaign statement and if the contribution is a loan, the interest rate for the loan.
>
> (6) The cumulative amount of contributions.

*Id.*, § 84211(f). To determine whether a particular donor or member's contribution was $100 or more for any given calendar year, a pro-rata amount may be used for reporting purposes.[14]

According to Carla Wardlow, Chief of the Technical Assistance Division of the California Fair Political Practices Commission, "[d]uring even-numbered years, CPLC may be required to file up to four pre-election campaign reports (two reports to the primary election and two reports prior to the general election), if the committee makes contributions or independent expenditures totaling $500 or more during the period covered by the pre-election statement." CGC § 84200.7 specifies the time for filing pre-election statements. For example, pursuant to § 84200.7(b)(1), pre-election statements for the November election should be filed no later than October 5. For those contributions received after the applicable date, a committee like CPLC would have to file a late contribution form. *Id.*, § 82036(a). However, according to Wardlow, "most campaign disclosure reports are required only when CPLC engages in campaign activity. If CPLC has no activity, only two reports are required each year - simple statements affirming that CPLC is conducting no campaign activity . . . ."

---

[14]In a 2003 advice letter, the California Fair Political Practices Commission provided the following example of pro-rating:

> [The organization] raises money from membership dues and by holding an annual fundraiser . . . Money raised from the fundraiser and membership dues . . . equals $40,000. [The organization] also contributes $10,000 to candidates and committees during this time. Thus, one quarter of all receipts are used for political purposes. Any person who donates $400 or more to [the organization] during this time period must be itemized, as required in section 84211(f), since one quarter of their donations are deemed contributions to the committee . . . .

California Fair Political Practices Commission, Ginger Osborne Advice Letter, No. A-03-108 (Osborne Advice Letter), at *2 (June 11, 2003).

Thereafter, if a recipient committee wishes to terminate, it must file a notice of its termination pursuant to CGC § 84214. By terminating, the committee "insure[s] that [it] will have no activity which must be disclosed . . ." *Id.*, § 84214.

**2. California Satisfied Its Burden Of Demonstrating That The Definition Of Contribution Is Narrowly Tailored To Advance Its Compelling Governmental Interest In Disclosure Of Groups Who Seek To Influence Voters.**

In determining whether legislation is narrowly tailored, we consider whether the restriction "(1) promotes a substantial government interest that would be achieved less effectively absent the regulation, and (2) [does] not burden substantially more speech than is necessary to further the government's legitimate interests." *Kuba v. 1-A Agriculural Ass'n*, 387 F.3d 850, 861 (9th Cir. 2001) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989)) (alteration and internal quotation marks omitted).[15]

**a. Other Methods of Defining What Payments Must Be Disclosed Do Not Advance California's Informational Interest.**

CPLC argues that California's compelling interest only justifies the disclosure of those payments that are expressly "made for political purposes for which full and adequate consideration is not made to the donor[,]" CCR § 18215(a). California counters that:

> By simply discouraging donors from earmarking their donations for expenditures on express campaign advocacy or by commingling earmarked con-

---

[15]Our earlier discussion of California's compelling interest explains why the regulation is necessary to meet the governmental interest in disclosing the sources of political speech to the voting public.

tributions with other funds, any multi-purpose group could escape classification as a 'recipient committee' under [CGC] section 82013(a), and thereby avoid the duty to disclose its contributors regardless of the size of the contribution or the level of its political activity.

**[10]** Supreme Court precedent supports a definition of "contribution" broader than that advocated by CPLC. In *MCFL*, 479 U.S. at 241, 252, 262, the Court upheld the disclosure requirements in 2 U.S.C. § 434(c). In that statute, "contribution" was defined as "any gift . . . or anything of value *made by any person for the purpose of influencing* any election for Federal office[.]" 2 U.S.C. § 431(8)(A)(I) (emphasis added). The Court did not question the constitutionality of these disclosure provisions, *i.e.*, what is meant by "to influence elections" or when the corporation will know that there is a "contribution." The fact that California has more explicitly defined "contribution" does not weaken its legislation. *Cf. Garza v. County of Los Angeles*, 918 F.2d 763, 772 (9th Cir. 1990) (noting that "while more frequent apportionment was not constitutionally required, it would be constitutionally permissible, and even practically desirable[ ]") (internal quotation marks and citation omitted).

In addition to a pure earmarking system, California considered "the system applicable to PACs, under which *all* receipts are reported as contributions[.]" California noted that such a system is "more restrictive and more burdensome than the current reporting requirements of the PRA." Consideration of alternatives and selection of a less burdensome alternative that furthers California's compelling interest supports a conclusion of narrow tailoring. *Cf. Kuba*, 387 F.3d at 862 n.12 (considering alternatives in assessing narrow tailoring).

**b.    Section 18215(b)(1)'s Presumption, Used To**

**Identify Those Payments That Qualify As Contributions, Is Permissible.**[16]

Citing to *Riley v. Nat'l Federation of the Blind*, 487 U.S. 781 (1988), and *Virginia v. Black*, 538 U.S. 343 (2003), CPLC postulates that California's presumption violates the First Amendment. It also urges us to conclude that presumptions cannot be applied to it, because it is not a PAC. CPLC's argument fails because both cases it relies on are distinguishable.

In *Riley*, 487 U.S. at 784-85, the Supreme Court considered the constitutionality of a North Carolina statute in which "a fee [to a professional fundraiser] exceeding 35% [wa]s presumed unreasonable, but the fundraiser [could] rebut the presumption . . ." The Court stated that "using percentages to decide the legality of the fundraiser's fee is not narrowly tailored to the State's interest in preventing fraud." *Id.* at 789.

In *Black*, 538 U.S. at 348, the Supreme Court considered the constitutionality of a Virginia cross-burning statute providing that "burning of a cross shall be prima facie evidence of an intent to intimidate a person or group of persons." (citation omitted). The provision was held to be unconstitutional because it "would create an unacceptable risk of the suppression of ideas." *Id.* at 365 (citation omitted). "[T]he provision chills constitutionally protected political speech because of the possibility that the Commonwealth will prosecute - and potentially convict - someone engaging only in lawful political speech at the core of what the First Amendment is designed to protect." *Id.*

In both cases, the Supreme Court was concerned with the chilling of speech. Although CPLC implies that California's

---

[16]CPLC does not take issue with the definition of "contribution" in CCR § 18215(a). Therefore, this discussion focuses on the provisions of § 18215(b)(1).

presumption may cause a group to "give up its right to express itself" to avoid designation as a recipient committee, there is no evidence in the record suggesting that such a chilling effect has occurred.[17]

[11] Contrary to CPLC's contentions, the record reflects that the presumption in § 18215(b)(1) is rebuttable, thus providing flexibility for a group like CPLC to adopt a reasonable method for identifying donors who are on notice of the existence of qualifying contributions.[18]

CGC § 82015(a) defines "contribution" as "a payment . . . *unless* it is clear from the surrounding circumstances that [the payment] is not made for a political purpose." (Emphasis added). Additionally, CCR § 18215(b) specifies that when a donor has reason to know that its donation may be used for

---

[17]In a related argument challenging the use of a presumption, CPLC contends that by using the term "purpose" in CCR § 18215(a), California is precluded from relying on a presumption. This argument is unavailing because it assumes that California is required to have a system in which only those donations which are specifically earmarked as "for the purpose of influencing" voters may be regulated. As discussed above, California has demonstrated that such a system would not advance its compelling governmental interest. Because CPLC is essentially making an overbreadth argument, it has the burden of showing that the inclusion of protected speech, *i.e.,* donations not made "for the purpose of influencing" voters, is substantial. *See Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Parsing words used in California's definition of "contribution" does not meet this burden.

[18]CPLC argues that California may not put forth this argument because the district court described the one-bite-at-the-apple presumption as irrebuttable and because California advances this argument for the first time on appeal. These arguments are unconvincing. To the extent that the district court's order may be read as classifying the presumption as irrebuttable, we are not bound by its interpretation because "[this Court] review[s] any element of legal analysis and statutory interpretation . . . de novo." *Siegel v. The Federal Home Loan Mortgage Corp.*, 143 F.3d 525, 528 (9th Cir. 1998) (citation omitted). Because claims, not arguments, are waived, we may address California's argument. *See United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004).

political purposes, the recipient committee may "apportion[ ] [the payment] on a reasonable basis in order to determine the amount of the contribution." Thus, in the event that a donation was made during a calendar year but before CPLC made the $1,000 expenditure that would put donors on notice, CPLC would *not* have to disclose those donations, because it is not reasonable to assume the donors had notice of the potential use of their donations for political purposes. Pursuant to CGC § 82015, the circumstances would convey that the donation was not meant to be a "contribution."[19] CPLC represents that "[a] presumption based on what the payee has done [i.e. made expenditures or contributions of $1,000 or more during the "lookback period"], not what the payor knows, that is applied even where the payor knows nothing of the payee's activity is not narrowly tailored to an interest in the disclosure of gifts 'made for the purpose of influencing' voters." This argument is unconvincing, because it is based on an erroneous interpretation of the PRA provisions. As discussed above, the pre-

---

[19]This interpretation is supported by the Fishburn Advice Letter. "For the remainder of that year [after the $1,000 or more contribution and/or expenditure] and the following four years, any donor to the organization would presumably know or have reason to know that funds with which the donations will be commingled may be used for political purposes." *Id.* at *4. Thus,

> [i]f a *subsequent* contribution or expenditure of $1,000 or more is made by the organization during the applicable period (current year plus 4 following years), the organization becomes a recipient committee, and any donations or membership fees it receives *after* the "first bite" contribution or expenditure of $1,000 or more has been taken, are deemed to have been received for political purposes, and the sources of any funds used by the organizations to make those contributions would [be] subject to disclosure on a reasonably apportioned basis.

*Id.* (emphasis added).

We do not determine the constitutionality of the presumption in § 18215(b)(1) on its face. Rather, we review the statute as interpreted by California. *See Tollis, Inc. v. San Bernardino County*, 827 F.2d 1329, 1333 (9th Cir. 1987) (reviewing ordinance as interpreted by County).

sumption is rebuttable. To the extent it can be shown that the donor had no knowledge of the organization's activities, then the organization need not disclose the donation. In addition, according to CGC § 82015, if it is clear from the surrounding circumstances that the donor did not intend for the donations to be for the purpose of influencing voters, no disclosure is required.

CPLC asserts that California's scheme is also underinclusive and thus not narrowly tailored. According to CPLC, "California considers donors to be on some level of constructive notice after a group makes an initial expenditure [during the current calendar year or the previous four calendar years] . . . but asserts no interest in disclosure during this period." For example, because the "reachback period is only for the calendar year, . . . it would not reach a large donation on December 31 of the prior year, even if the second, triggering independent expenditure occurs on the following day on January 1 of the present year." However, CPLC itself demonstrates why its argument does not establish underinclusiveness, recognizing that "of course, if that gift [on December 31 of the prior year] were really 'made for the purpose of influencing' voters, it would already be captured as a disclosable true contribution and the recipient group would properly be a recipient committee." Thus, the scheme is not underinclusive because to the extent that the hypothetical payment on December 31 were "made for the purpose of influencing" voters, it would be necessarily disclosed.

**[12]** Accordingly, we conclude that the presumption in § 18215(b)(1) is narrowly tailored. "To be narrowly tailored, a statute need not be the least restrictive means of furthering the government's interests, but the restriction may not burden substantially more speech than necessary to further the interests." *Menotti v. City of Seattle*, 409 F.3d 1113, 1130-1131 (9th Cir. 2005) (citation and internal quotation marks omitted). California has demonstrated why other alternatives fail to advance its compelling informational interest. Moreover, as

interpreted by California, § 18215(b)(1) does not burden substantially more speech than necessary and serves to advance the compelling informational interest. *See Arizona Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002, 1011 (9th Cir. 2003) ("In determining whether a statute is narrowly tailored to serve a significant government interest, we look to the 'fit' between the state's regulation and the stated purposes[.]") (citation omitted).

### c.    Pro-Ration and The Articulated Exception For Organizations With Other Funds Further Demonstrate That The Definition Of "Contribution" Is Narrowly Tailored.

**[13]** A recipient committee is only required to disclose those "contributions" that on a pro-rated basis are $100 or more. According to California, pro-ration advances its compelling governmental interest because "[t]he greater the organization's political involvement and the greater the size of the contribution, the greater the disclosure."

**[14]** CPLC counters that the pro-ration is not narrowly tailored because "the larger a group's receipts, the smaller the chance that a donation will be disclosed as a 'contribution.'" Contrary to this assertion, the pro-ration approach actually demonstrates California's attempt to narrow the statute and capture only those payments "made for the purpose of influencing" voters, because a donation is disclosed only to the extent that the donee corporation participates in ballot measure advocacy.

CPLC asserts that there is a resulting underinclusiveness because "the same donation made to two groups (with the same lack of any communicated 'purpose to influence' voters) would be disclosable as a prorated 'contribution' if made to one but not the other." CPLC explains that the California scheme "permits the group to first count any proceeds it has from sales toward the expenditure, so if a group has offsetting

proceeds from sales it does not need to report any 'contributions.' " However, this challenge is based on a misinterpretation of how the PRA provisions operate. In fact, the pro-ration provision applies only if the organization's "contributions or expenditures are made solely from that source . . ." Fishburn Advice Letter, at *5 (explaining that this provision addresses circumstances where "an organization has sufficient income [from sources other than donations or membership dues] . . . and [its] contributions or expenditures are made *solely* from that source") (emphasis added).

**[15]** California examined alternatives and reasonably determined that the alternatives do not advance its compelling interest or were more restrictive. Additionally, CPLC failed to establish that the presumption was impermissibly overinclusive or underinclusive. Therefore, the PRA's disclosure provisions meet the "narrowly tailored" requirement.

### 3. California Has Not Satisfied Its Burden Of Demonstrating That The Political Action Committee-Like Requirements Imposed On A Group Like CPLC Are Narrowly Tailored To California's Compelling Informational Interest.

**[16]** In addition to requiring disclosure of "contributions," the PRA imposes political action committee-like requirements on a group like CPLC, a multi-purpose organization. California makes two primary arguments in support of these requirements. "First, the Constitution permits California to require CPLC to form and use a PAC [Political Action Committee] for its political activities, treating all its 'donations' as 'contributions.' " "Second, CPLC is not the kind of organization exempted from PAC-like reporting obligations under the teaching of *MCFL*."

California's arguments ignore the distinction between candidate and ballot measure elections. Instead, California relies on its observation that "the federal counterpart to the PRA has

required all groups organized in corporate form, including non-profit corporations, to channel express campaign advocacy through PACs, to which all 'donations' are, of course, 'contributions.' " The following language in *McConnell* is specified in support of this proposition:

> Since our decision in *Buckley*, Congress' power to prohibit corporations and unions from using funds in their treasuries to finance advertisements *expressly advocating the election or defeat of candidates* in federal elections has been firmly embedded in our law. The ability to form and administer separate segregated funds authorized by FECA . . . has provided corporations and unions with a constitutionally sufficient opportunity to engage in express advocacy. That has been this Court's unanimous view, and it is not challenged in this litigation.

*Id.* (citing *McConnell*, 540 U.S. at 203) (citation and footnote reference omitted) (emphasis added). However, California's reliance on *McConnell* and its interpretation of the federal statute are both mistaken.

*McConnell* supports the required use of a separate segregated fund when the organization is "expressly advocating the election or defeat of *candidates* . . ." 540 U.S. at 203 (emphasis added). The reasoning of *McConnell* extends no further. *See also MCFL*, 479 U.S. at 241, 247-48 (interpreting 2 U.S.C. § 441b to cover expenditures made directly to candidates as well as on behalf of candidates). This reading is further supported by the language of § 441b(a) making it unlawful "for any . . . corporation . . . to make a *contribution* or *expenditure* in connection *with any election to any political office*, or in connection with any primary election . . . *held to select candidates for any political office* . . ." 2 U.S.C. § 441b(a) (emphasis added). "Contribution" is defined as "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of

influencing any election *for Federal office*[.]" § 431(8)(A)(I) (emphasis added). "Expenditure" is defined as "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election *for Federal office*[.]" § 431(9)(A)(I) (emphasis added). "Federal office" is defined as "the office of President or Vice President, or of Senator or Representative in, or Delegate or Resident Commissioner to, the Congress." § 431(3). Thus, the requirement of a separate segregated fund pursuant to § 441b appears to only be in the context of contributions or expenditures to or on behalf of *candidates*.

California's citation to *Bellotti* does not salvage its argument. In *Bellotti*, 435 U.S. at 767, the Supreme Court considered a "state criminal statute that for[bade] certain expenditures by banks and business corporations for the purpose of influencing the vote on referendum proposals . . ." The Court held the statute to be unconstitutional, noting "[t]he risk of corruption perceived in cases involving candidate elections, simply is not present in a popular vote on a public issue." *Id.* at 776, 790 (citations and footnote reference omitted). California contends that "[t]he statute at issue in *Bellotti* did not provide corporations with the 'PAC option' that *Buckley* found to be a 'constitutionally sufficient opportunity' for corporations wishing to engage in political speech." California asks us to conclude that the Supreme Court would have upheld the statute reviewed in *Bellotti* had such an option existed. However, the Court's decision simply does not support that conclusion.

The weakness of California's first argument undermines its second argument. Based on the fact that *McConnell* recognized an exception from the § 441b segregated-fund requirement for *MCFL*-type corporations, *see McConnell*, 540 U.S. at 211, California contends that because CPLC does not qualify as an *MCFL*-type corporation, it "is not entitled to an 'exemption' from requirements that it disclose the sources of

money actually spent on ballot measure advocacy."[20] However, as discussed above, it is not at all certain that the Supreme Court would apply the same criteria to ballot measure advocacy as it did when election of candidates was involved.

In addition to these two primary arguments, California presented testimony demonstrating that a group such as CPLC could form a PAC to simplify reporting. However, the Court in *MCFL* discounted that fact in analyzing the disclosure requirements. *See* 540 U.S. at 203 & n.86.

California also argues that the "reporting, registration, record-keeping and notice requirements . . . imposed on CPLC or groups like CPLC are necessary and reasonable[,]" because the " 'burdens' enumerated [by] CPLC[ ] . . . have all been upheld by the Supreme Court and could constitutionally be imposed on CPLC by California." However, this argument is again unpersuasive because *McConnell* dealt solely with disclosures in the *candidate context*. *See* 540 U.S. at 194.

**[17]** In *MCFL*, the Federal Election Commission argued that "the inapplicability of § 441b to MCFL would open the door to massive, undisclosed political spending by similar entities, and to their use as conduits for undisclosed spending by business corporations and unions." *MCFL*, 479 U.S. at 262. The Court responded that it "s[aw] no such danger. Even if § 441b is inapplicable, an independent expenditure of as lit-

---

[20]In its reply brief, CPLC argues that it would "*likely* qualify as an MCFL-type because donations from corporations, if any, would be *de minimis*, and several federal courts have held that the exception requirement is satisfied with *de minimis* corporate donations." We need not address this argument because it is raised for the first time in the reply brief. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("It is well established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (citation and alteration omitted). Moreover, insufficient evidence exists in the record to determine whether corporate donations were in fact *de minimis*.

tle as $250 by MCFL will trigger the disclosure provisions of § 434(c)." *Id.* "These reporting obligations provide precisely the information necessary to monitor MCFL's independent spending activity and its receipt of contributions. The state interest in disclosure therefore can be met in a manner less restrictive than imposing the full panoply of regulations that accompany status as a political committee under the Act." *Id.*; *see also Bellotti*, 435 U.S. at 767, 795 (invalidating a Massachusetts statute that restricted corporations from contributing to ballot measure referenda).

## E.   CPLC Has Failed To Establish Overbreadth.

To prevail on its overbreadth challenge, CPLC must demonstrate that "the overbreadth of [the] statute [is] not only . . . real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

CPLC argues that the "reason to know" presumption contained in CCR § 18215(b) is irrebuttable and thus overbroad. CPLC contends that "[i]f a donor makes a gift to a group like CPLC for the earmarked purpose of building a new office and the transmogrifying presumption engages, there is no exception in the PRA regulations that permits the group to exclude that gift from being considered a prorated contribution . . . . California insists that it was 'made for the purpose of influencing' voters." This argument fails because as discussed above, the presumption may be rebutted. *See* CGC § 82015(a), CCR § 18215(b).

CPLC also asserts that its associational rights are violated. In *NAACP v. Alabama*, 357 U.S. 449, 462 (1958), the Supreme Court invalidated compelled disclosure of membership in an organization because the NAACP "made an uncontroverted showing that on past occasions revelation of the identity of its rank-and-file members has exposed these members to economic reprisal, loss of employment, threat of physical coercion, and other manifestations of public hostility."

The Court in *McConnell* clarified that for compelled disclosure to be unconstitutional, as in *NAACP*, "the evidence must demonstrate a reasonable probability that the compelled disclosure of a party's contributors' names will subject them to threats, harassment or reprisals from either Government officials or private parties." *McConnell*, 540 U.S. at 198 (citation omitted). CPLC made no such showing.

Thus, California has met its burden of demonstrating that the definition of "contribution" is narrowly tailored to its compelling informational interest, and CPLC may be required to disclose "contributions," as defined by the PRA.

## *CONCLUSION*

[18] We hold that California has demonstrated the existence of a compelling governmental interest and that the PRA's definition of "contribution" is narrowly tailored to promote its compelling informational interest. However, California has failed to demonstrate how the additional political committee-like requirements are narrowly tailored to advance its compelling governmental interest.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

**Each party is to bear its costs on appeal.**