**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FAMILY PAC,

        *Plaintiff-Appellee,*

    v.

ROB MCKENNA, in his official capacity as Attorney General of Washington; JIM CLEMENTS, member of the Public Disclosure Commission, in his official capacity; DAVID SEABROOK, member of the Public Disclosure Commission, in his official capacity; JANE NOLAND, member of the Public Disclosure Commission, in her official capacity; JENNIFER JOLY, member of the Public Disclosure Commission, in her official capacity; BARRY SEHLIN, member of the Public Disclosure Commission, in his official capacity,

        *Defendants-Appellants.*

No. 10-35832

D.C. No.
3:09-cv-05662-RBL

889

FAMILY PAC,

    *Plaintiff-Appellant,*

    v.

ROB McKENNA, in his official
capacity as Attorney General of
Washington; JIM CLEMENTS,
member of the Public Disclosure
Commission, in his official
capacity; DAVID SEABROOK,
member of the Public Disclosure
Commission, in his official
capacity; JANE NOLAND, member of
the Public Disclosure Commission,
in her official capacity; JENNIFER
JOLY, member of the Public
Disclosure Commission, in her
official capacity; BARRY SEHLIN,
member of the Public Disclosure
Commission, in his official
capacity,

    *Defendants-Appellees.*

No. 10-35893

D.C. No.
3:09-cv-05662-RBL

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued and Submitted
November 16, 2011—Portland, Oregon

Filed December 29, 2011
Amended January 31, 2012

Before: Raymond C. Fisher, Richard A. Paez and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Fisher

## COUNSEL

Robert M. McKenna, Attorney General, Linda A. Dalton, Senior Assistant Attorney General, and Nancy J. Krier (argued), Special Assistant Attorney General, Olympia, Washington, for the defendants-appellants-cross appellees.

James Bopp, Jr. (argued), Joseph E. La Rue and Noel Johnson, Bopp, Coleson & Bostrom, Terre Haute, Indiana, for the plaintiff-appellee-cross appellant.

William R. Maurer, Seattle, Washington; William H. Mellor and Paul M. Sherman, Arlington, Virginia, for amicus curiae Institute for Justice.

Peter S. Holmes, Seattle City Attorney, and Gary Keese, Assistant City Attorney, for amicus curiae Seattle Ethics and Election Commission.

---

## ORDER

The mandate issued January 20, 2012, is recalled. The opinion filed December 29, 2011, and reported at 664 F.3d 296, is amended as follows:

In footnote 4, delete <In any event, a survey purporting to show that respondents in six states other than Washington would "think twice" before contributing to a ballot measure campaign offers little insight into the deterrent effect of Washington's disclosure requirements on individuals' actual decisionmaking.>, and replace it with <In any event, a survey purporting to show that respondents in six states would "think twice" before contributing to a ballot measure campaign offers little insight into the deterrent effect of Washington's disclosure requirements on individuals' actual decisionmaking.>.

With this amendment, the mandate shall issue forthwith.

---

## OPINION

FISHER, Circuit Judge:

We address the constitutionality of three provisions of Washington election law as applied to the political committees that support and oppose ballot measures. We hold that

Washington's disclosure requirements, Washington Revised Code § 42.17.090 and Washington Administrative Code § 390-16-034, which require these committees to disclose the name and address of contributors giving more than $25, and additionally to disclose the employer and occupation of contributors giving more than $100, survive exacting scrutiny because they are substantially related to the important governmental interest in informing the electorate. We hold that Washington Revised Code § 42.17.105(8), which prohibits a political committee from accepting from any one person contributions exceeding $5,000 within 21 days of a general election, is not closely drawn to achieve the state's important interest in informing the electorate. Section 42.17.105(8) is therefore unconstitutional as applied to ballot measure committees. We affirm the judgment of the district court.

## I.

Family PAC is a continuing political committee organized under Washington Revised Code § 42.17.040. Compl. ¶ 21. According to the verified complaint, Family PAC organized as a political committee to support "traditional family values" by soliciting and receiving contributions and making contributions and expenditures to support or oppose ballot measures. *Id.* ¶ 22. Family PAC's initial project was to oppose Washington's domestic partnership law by urging voters to support Referendum 71 in the 2009 election. *Id.*

In this action, filed in October 2009, Family PAC alleged that three provisions of Washington election law violate the First Amendment as applied to ballot measure committees: (1) Washington Revised Code § 42.17.090, which requires a political committee to report the name and address of each person contributing more than $25 to the committee; (2) Washington Administrative Code § 390-16-034, which adds the requirement that a political committee report the occupation and employer of each person contributing more than $100 to the committee; and (3) Washington Revised Code

§ 42.17.105(8), which prohibits a political committee from accepting from any one person contributions exceeding $5,000 within 21 days of a general election.[1,2,3] Washington imposes no limit on contributions accepted by ballot measure committees outside this 21-day period. Nor do the rules limit

---

[1]Section 42.17.090 provides in relevant part:

> Each report required under RCW 42.17.080 (1) and (2) shall disclose the following: . . . (b) The name and address of each person who has made one or more contributions during the period, together with the money value and date of such contributions and the aggregate value of all contributions received from each such person during the campaign or in the case of a continuing political committee, the current calendar year: PROVIDED, That pledges in the aggregate of less than one hundred dollars from any one person need not be reported: PROVIDED FURTHER, That the income which results from a fund-raising activity conducted in accordance with RCW 42.17.067 may be reported as one lump sum, with the exception of that portion of such income which was received from persons whose names and addresses are required to be included in the report required by RCW 42.17.067: PROVIDED FURTHER, That contributions of no more than twenty-five dollars in the aggregate from any one person during the election campaign may be reported as one lump sum so long as the campaign treasurer maintains a separate and private list of the name, address, and amount of each such contributor: PROVIDED FURTHER, That the money value of contributions of postage shall be the face value of such postage . . . .

Wash. Rev. Code § 42.17.090(1). The parties agree this provision requires committees to disclose the name and address of contributors giving over $25.

[2]Section 390-16-034 states:

> Pursuant to RCW 42.17.090, each report required under RCW 42.17.080 shall disclose, in addition to the name and address of each person who has made one or more contributions in the aggregate amount of more than one hundred dollars, the occupation and the name and address of the person's employer.

Wash. Admin. Code § 390-16-034; *see also* Wash. Rev. Code § 42.17.090(k) (authorizing the Washington State Public Disclosure Commission to issue disclosure requirements in addition to those specified in § 42.17.090(1) itself).

[3]Section 42.17.105(8) provides:

what a ballot measure committee can *spend*, either before or during the 21-day period.

The complaint asserted that Family PAC intends to accept contributions in excess of $25 and $100, and that "[p]otential donors to Family PAC have indicated that they are unwilling to donate if Family PAC is required to report their name and address pursuant to [the disclosure laws]." Compl. ¶¶ 28-30. Family PAC also presented evidence that, but for the $5,000 contribution limit, it would have received contributions of $60,000 and $20,000 from Focus on the Family during the Referendum 71 campaign. Passignano Decl. ¶¶ 7-13.

Family PAC sought a declaration that the three challenged provisions violate the First Amendment and an order enjoining the state from enforcing the provisions against ballot measure committees. The defendants are the Washington State Attorney General and the members of the Washington State Public Disclosure Commission (PDC), which administers and enforces the challenged provisions. We refer to the defendants collectively as "the state."

Family PAC moved for summary judgment, which the district court granted in part and denied in part. The court held that the $25 and $100 disclosure requirements survived exacting scrutiny because they are substantially related to an

---

It is a violation of this chapter for any person to make, or for any candidate or political committee to accept from any one person, contributions reportable under RCW 42.17.090 in the aggregate exceeding fifty thousand dollars for any campaign for statewide office or exceeding five thousand dollars for any other campaign subject to the provisions of this chapter within twenty-one days of a general election. This subsection does not apply to contributions made by, or accepted from, a bona fide political party as defined in this chapter, excluding the county central committee or legislative district committee.

Wash. Rev. Code § 42.17.105(8).

important governmental interest in allowing voters to "follow the money" behind ballot measures. The court explained:

> [T]hough the limits may seem low to [Family PAC], small contributions when aggregated by organizations of people ("special interests," as we so often refer to them in the political debate: unions, business interests, occupational guilds or associations) they can have a powerful impact on the debate and voters can benefit from the information that disclosure provides.

The court accordingly denied summary judgment with respect to the $25 and $100 disclosure requirements. The court subsequently dismissed these claims with prejudice.

The court construed the 21-day contribution limit as "a ban on political speech," and accordingly applied strict scrutiny. It agreed with the state that the government has a compelling interest in allowing voters to identify contributors to ballot measure campaigns, but concluded that the 21-day limit was insufficiently tailored to achieve this interest:

> The State focuses on the fact that all but one of Washington counties use a vote-by-mail system and they mail ballots 18 days before the election date. This system is offered up as modern-day justification for a 1970s-era law that may have needed up to 21 days to gather, organize, and distribute the information about campaign contributions.

> Now, however, campaign contributions can be reported and made publicly available within minutes, and certainly within 24 hours. Given that reality, a 21-day ban on large contributions cannot be viewed as necessary or narrowly tailored to effectuate the original purpose.

The fact that voters have access to ballots earlier than before, and that they may choose to vote before all the election debate is in fact over, is not a sufficient reason to save this statute as it pertains to [ballot measures].

The compelling State interest here is providing access to voters to information relevant to voting decision[s]. That information can be provided to voters without a ban on large donations lasting for as long as 21 days prior to the election. The 21 days prior to an election is a time when the political debate is fully joined and the attention of voters is most focused. . . .

Such a ban may pass constitutional muster if limited to a time more carefully calculated to reflect the current time necessary to gather and organize and disseminate the relevant information about contributions and contributors that the government legitimately seeks to convey.

The court accordingly granted Family PAC's motion for summary judgment with respect to the 21-day contribution limit, declaring the $5,000 limit unconstitutional as applied to ballot measure committees.

The court entered judgment, and both parties appealed. We have jurisdiction under 28 U.S.C. § 1291, we review de novo, *see City of L.A. v. San Pedro Boat Works*, 635 F.3d 440, 446 (9th Cir. 2011), and we affirm.

## II.

We begin by addressing Family PAC's argument that the disclosure requirements, Washington Revised Code § 42.17.090(1)(b) and Washington Administrative Code § 390-16-34, are unconstitutional as applied to ballot measure

committees. Disclosure requirements are subject to exacting scrutiny. *See Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1005 (9th Cir. 2010). To survive such scrutiny, the disclosure requirements must be "substantially related to a sufficiently important governmental interest." *Id.*

### A.   Important Governmental Interest

Family PAC argues that requiring disclosure of contributions to ballot measure committees serves no important governmental interest. Family PAC acknowledges that courts have often held that states have an important *informational* interest in requiring such disclosures, but points out that the Tenth Circuit called that interest into question in *Sampson v. Buescher*, 625 F.3d 1247, 1256 (10th Cir. 2010).

[1] *Sampson* did not ultimately reject the longstanding principle that the public has an interest in learning who supports and opposes ballot measures. *See id.* at 1259. Even if *Sampson* had done so, however, Family PAC's argument would be foreclosed by circuit precedent. We have repeatedly recognized an important (and even compelling) informational interest in requiring ballot measure committees to disclose information about contributions. *See Human Life*, 624 F.3d at 1005-06; *Canyon Ferry Rd. Baptist Church of E. Helena, Inc. v. Unsworth*, 556 F.3d 1021, 1031-32 (9th Cir. 2009); *Cal. Pro-Life Council, Inc. v. Randolph*, 507 F.3d 1172, 1178-79 & n.8 (9th Cir. 2007), *abrogation on other grounds recognized in Human Life*, 624 F.3d at 1013; *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1104-07 (9th Cir. 2003). Washington therefore has an important governmental interest — informing the voting public — in requiring the disclosure of contributions made to ballot measure committees. Family PAC's argument to the contrary is without merit.

### B.   Substantial Relation

We turn to whether the state has shown that the $25 and $100 disclosure requirements are substantially related to the

state's informational interest. To survive exacting scrutiny, "the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." *Davis v. FEC*, 554 U.S. 724, 744 (2008).

## 1. The Actual Burden on First Amendment Rights

As relevant here, Washington's disclosure requirements can burden First Amendment rights in two ways. First, they can deter individuals who would prefer to remain anonymous from contributing to a ballot measure committee. *See Buckley v. Valeo*, 424 U.S. 1, 68 (1976) ("It is undoubtedly true that public disclosure of contributions to candidates and political parties will deter some individuals who otherwise might contribute."); *id.* at 83 ("[S]trict [disclosure] requirements may well discourage participation by some citizens in the political process."); *Canyon Ferry*, 556 F.3d at 1036 (Noonan, J., concurring) (observing that "[f]or business or social reasons, a small contributor may wish not to be publicly identified with one side of a controversial public issue. The required report strips this contributor of his chosen anonymity," which may discourage him from contributing).

**[2]** This burden, however, is modest. Disclosure requirements "may burden the ability to speak, but they impose no ceiling on campaign-related activities, and do not prevent anyone from speaking." *Citizens United v. FEC*, 130 S. Ct. 876, 914 (2010) (citations and internal quotation marks omitted). Here, although Family PAC cites a survey conducted in six states (not including Washington) purporting to show that people may "think twice" about contributing to ballot measure committees if their names and addresses are to be publicly disclosed, Family PAC has not presented evidence suggesting that Washington's disclosure laws actually and meaningfully deter contributors.[4] The Washington requirements accordingly serve as only a modest deterrent to contributors.

---

[4]In the survey cited by Family PAC, 82% of respondents agreed that the government should require that the identities of those who contribute to

**[3]** Second, "disclosure requirements can chill donations to an organization by exposing donors to retaliation." *Citizens United*, 130 S. Ct. at 916. Here, however, Family PAC has made no showing that Washington's disclosure requirements expose contributors to a significant or systemic risk of harassment or retaliation. In *Doe v. Reed*, 130 S. Ct. 2811 (2010), the Supreme Court considered whether disclosure of referendum petitions — containing the names and addresses of signers — violates the First Amendment. The Court acknowl-

---

ballot issue campaigns be available to the public. *See* Dick M. Carpenter II, *Disclosure Costs: Unintended Consequences of Campaign Finance Reform*, Institute for Justice, 7 (Mar. 2007), *available at* http://www.ij.org/images/pdf_folder/other_pubs/DisclosureCosts.pdf. When asked whether public disclosure would impact their own decisions to contribute, however, respondents suggested that they might "think twice" before contributing. Almost 60% of respondents agreed with the following statement: "If by contributing to a ballot issue campaign my name and address were released to the public by the state, I would think twice before donating money." *Id.* Almost 50% agreed with the following statement: "If by contributing to a ballot issue campaign my employer's name were released to the public by the state, I would think twice before donating money." *Id.* The state properly points out that Carpenter was not presented as an expert witness, and his survey was neither presented as evidence nor tested by the evidentiary rigors that apply to expert reports. We therefore decline to give it evidentiary weight. In any event, a survey purporting to show that respondents in six states would "think twice" before contributing to a ballot measure campaign offers little insight into the deterrent effect of Washington's disclosure requirements on individuals' actual decisionmaking. We do not doubt that disclosure requirements have some deterrent effect on contributions, *see Buckley*, 424 U.S. at 68, 83, but the evidence in this case does not show that this burden is substantial. Notably, notwithstanding the state's disclosure requirements, Washington's ballot measure committees have been able to raise a great deal of money. In 2008, 12 statewide ballot measure committees reported $9.5 million in contributions and expenditures; 89 local ballot measure committees reported another $3.7 million in contributions and expenditures. Ellis Decl. ¶ 23. In 2005, expenditures on a single statewide initiative reached more than $15.6 million. *Id.* ¶ 24. And in the 2008 Washington election as a whole, more than $1.4 million was contributed by persons giving between $25.01 and $30 in 54,502 contributions. *Id.* ¶ 44.

edged that in the case of "particularly controversial petitions," public disclosure could lead to harassment or intimidation of petition signers. *See id.* at 2820-21. There was, however, "no reason to assume that any burdens imposed by disclosure of typical referendum petitions would be remotely like th[ose] burdens." *Id.* at 2821. Thus, notwithstanding the possibility of harassment and retaliation in an isolated case, the disclosure rules as a general matter imposed only modest First Amendment burdens. *See id.* The Court explained that in an atypical case presenting a bona fide threat of harassment or retaliation, an aggrieved party could seek an exemption from compelled disclosure by making a sufficient evidentiary showing in an as-applied challenge. *See id.* at 2820-21.

[4] This same reasoning applies here. Family PAC has made no showing that §§ 42.17.090 and 390-16-034, as a general matter, expose contributors to harassment, intimidation or retaliation. In the unusual case presenting a genuine threat of harassment or retaliation, the affected party can challenge these disclosure requirements as applied. *See Citizens United*, 130 S. Ct. at 914 ("[A]s-applied challenges would be available if a group could show a 'reasonable probability' that disclosure of its contributors' names 'will subject them to threats, harassment, or reprisals from either Government officials or private parties.'" (quoting *McConnell v. FEC*, 540 U.S. 93, 198 (2003))). Here, Family PAC has not asserted an as-applied challenge or attempted to make the particularized showing required by Supreme Court precedent.[5] Thus, as in

---

[5]Family PAC challenges §§ 42.17.090 and 390-16-034 on their face, but only as applied to ballot measure committees. For the reasons given in *Doe*, we treat this as a facial challenge:

> The claim is "as applied" in the sense that it does not seek to strike the [regulation] in all its applications, but only to the extent it covers referendum petitions. The claim is "facial" in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions.
>
> The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow . . . reach beyond the

*Doe*, the challenged disclosure requirements impose only a modest burden on First Amendment rights.[6]

## 2. The Strength of the Governmental Interest

**[5]** We next consider whether the strength of the governmental interest in disclosure justifies these modest burdens. The governmental interest in informing the electorate about who is financing ballot measure committees is of great importance. Disclosure enables the electorate to "give proper weight to different speakers and messages," *Citizens United*, 130 S. Ct. at 916, by "providing the voting public with the information with which to assess the various messages vying for their attention in the marketplace of ideas," *Human Life*, 624 F.3d at 1008. The money in ballot measure campaigns "produces a cacophony of political communications through which . . . voters must pick out meaningful and accurate messages." *Getman*, 328 F.3d at 1105. "Given the complexity of the issues and the unwillingness of much of the electorate to independently study the propriety of individual ballot measures, we think being able to evaluate who is doing the talking is of great importance." *Id.* Disclosure also gives voters insight into the actual policy ramifications of a ballot measure. "Knowing which interested parties back or oppose a ballot measure is critical, especially when one considers that ballot-measure language is typically confusing, and the long-term policy ramifications of the ballot measure are often unknown." *Id.* at 1106. "At least by knowing who backs or

particular circumstances of these plaintiffs. They must therefore satisfy our standards for a facial challenge to the extent of that reach.

130 S. Ct. at 2817.

[6]These disclosure requirements also impose administrative burdens on ballot committees, which are responsible for compiling and filing required disclosure reports. *See, e.g.*, *Canyon Ferry*, 556 F.3d at 1034 (discussing "the burden of reporting"). These burdens too, however, are generally modest, and Family PAC does not challenge them on an as-applied basis.

opposes a given initiative, voters will have a pretty good idea of who stands to benefit from the legislation." *Id.* In addition, "mandating disclosure of the financiers of a ballot initiative may prevent 'the wolf from masquerading in sheep's clothing.' " *Canyon Ferry*, 556 F.3d at 1032 (quoting *Getman*, 328 F.3d at 1106 n.24); *see also Human Life*, 624 F.3d at 1017; *Randolph*, 507 F.3d at 1179 n.8 (observing that the names groups give themselves for disclosure purposes are frequently ambiguous or misleading). Washington's disclosure requirements therefore serve a strong governmental interest.

**[6]** Balancing the aforementioned burdens against the governmental interest, we have little trouble in holding that Washington's disclosure requirements are, as a general matter, substantially related to an important governmental interest. The requirements impose only modest burdens on First Amendment rights, while serving a governmental interest in an informed electorate that is of the utmost importance. We therefore reject Family PAC's broad challenge to Washington Revised Code § 42.17.090 and Washington Administrative Code § 390-16-034.

That is not the end of the inquiry, however, because, even if §§ 42.17.090 and 390-16-034 are permissible as a general matter, Family PAC argues that the $25 and $100 thresholds themselves are too low to survive exacting scrutiny.

Family PAC's argument rests on a generally sound premise — that the informational interest in disclosure applies with greater force to large contributions than to small ones. We explained in *Canyon Ferry* that, "[a]s a matter of common sense, the value of this financial information to the voters declines drastically as the value of the expenditure or contribution sinks to a negligible level." 556 F.3d at 1033 (emphasis omitted).[7] The informational interest weakens as the size

---

[7]As the size of the contribution falls, and the informational value of disclosure thereby declines, the deterrent effect of disclosure may actually

of the contributions decrease, and at some point contributions are so small that disclosure may provide voters with little relevant information.[8] When that point is reached, a court presumably should ask whether the burdens imposed by disclosure outweigh the informational interests served by it.

**[7]** We are not persuaded, however, that the tipping point has been reached in the case of Washington's $25 and $100 thresholds. Critically, we do not agree with Family PAC's contention that disclosure of small contributors does not provide information that enables the electorate to evaluate campaign messages and make informed decisions. It is true that the public disclosure of a single $25.01 contribution to a bal-

increase. *See Buckley*, 424 U.S. at 83 ("Contributors of relatively small amounts are likely to be especially sensitive to recording or disclosure of their political preferences."). If this is the case, then applying disclosure requirements to smaller and smaller contributions eventually risks tipping the constitutional balance against disclosure. It is far from clear, however, that even a zero-dollar disclosure threshold would succumb to exacting scrutiny. *See Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 300 (1981) ("[I]f it is thought wise, legislation can outlaw anonymous contributions."); *Canyon Ferry*, 556 F.3d at 1034 ("It may very well be that . . . all monetary contributions convey sufficiently valuable information about the supporters of an initiative to justify the burden of disclosure."). We need not confront that question here, because Washington has not chosen a zero-dollar threshold, and, as we explain in text, the information disclosed at the $25 and $100 levels established by Washington law is sufficiently important to the electorate that the thresholds withstand exacting scrutiny.

[8] *See, e.g.*, Elizabeth Garrett, *Voting with Cues*, 37 U. Rich. L. Rev. 1011, 1042 (2003) ("The source and amount of small contributions and expenditures are not generally informative to voters . . . ."); William McGeveran, *Mrs. McIntyre's Checkbook: Privacy Costs of Political Contribution Disclosure*, 6 U. Pa. J. Const. L. 1, 47 (2003) ("[D]iffuse and hard-to-digest data, concerning modest-sized individual contributions made for various unknowable reasons, adds little 'relevant information' to a voter's decision-making process."); Richard Briffault, *Issue Advocacy: Redrawing the Elections/Politics Line*, 77 Tex. L. Rev. 1751, 1789-90 (1999) ("Knowing about [small contributions] provides the voters with little in the way of useful information.").

lot measure campaign may provide little relevant information to voters. As the district court recognized, however, small contributions may provide useful information to voters when considered *in the aggregate*. On the PDC's website, voters can conduct detailed searches and sort ballot measure contribution data by city, state and zip code.[9] Voters can use this geographical information to determine, for example, whether statewide ballot measures are financed by out-of-state contributors, or to determine whether county-wide ballot measures are financed by out-of-county interests. With respect to contributions exceeding $100, voters can also aggregate the data by employer and occupation to determine whether particular economic interests stand to benefit from the legislation. This type of information may not be as critical as knowing that XYZ Corporation gave $10 million to the campaign, but it is nonetheless useful and relevant. We therefore hold that the $25 and $100 thresholds are substantially related to the state's informational interest.

Our holding is reinforced by several additional considerations. First, we are not aware of any judicial decision invalidating a contribution disclosure requirement, or holding that a contribution disclosure threshold was impermissibly low.[10]

---

[9]According to the state's evidence, the PDC website received 40,423 unique visitors and 596,223 web pages were viewed during fiscal year 2009. Ellis Decl. ¶ 14.

[10]In both *Canyon Ferry* and *Sampson*, the courts invalidated *reporting* requirements — i.e., when an organization is required to file contribution and expenditure reports with state election regulators — rather than *contribution* disclosure requirements — i.e., assuming an organization is subject to a reporting requirement, what contributions must be disclosed in the reports. *See Canyon Ferry*, 556 F.3d at 1033-34 (granting the plaintiff's challenge to Montana's "zero-dollar" reporting threshold as applied to the plaintiff's in-kind, de minimis expenditures in support of a statewide ballot measure); *Sampson*, 625 F.3d at 1249, 1259-61 (granting the plaintiffs' challenge — to a Colorado law requiring any group of two or more persons that has accepted or made contributions or expenditures exceeding $200 to support or oppose a ballot issue to register as an issue committee

Second, in *Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 294 n.4, 298, 299-300 (1981), the Supreme Court spoke approvingly of a city ordinance requiring political committees to disclose the names and addresses of persons contributing $50 or more to a ballot measure campaign, a threshold roughly comparable to the $25 and $100 disclosure thresholds at issue here. The disclosure requirement was not challenged in *Citizens Against Rent Control*, so the Court's language is dictum. Nevertheless, the decision certainly suggests that the Court would have upheld the requirement had the question been raised. *See also Randolph*, 507 F.3d at 1182 (upholding contribution disclosure requirements covering contributions totaling $100 or more and requiring disclosure of the contributor's name, address, occupation and employer); *Minn. State Ethical Practices Bd. v. Nat'l Rifle Ass'n*, 761 F.2d 509, 512 (8th Cir. 1985) (per curiam) (upholding a Minnesota law requiring disclosure of the name, address and employer of each person who contributes $50 or more in one year for legislative races or $100 or more per year for statewide races or ballot questions).

Third, disclosure thresholds, like contribution limits, are inherently inexact; courts therefore owe substantial deference to legislative judgments fixing these amounts. As the Supreme Court explained in *Buckley*:

> [W]e cannot require Congress to establish that it has chosen the highest reasonable threshold. The line is necessarily a judgmental decision, best left in the context of this complex legislation to congressional

---

and report the names and addresses of contributors — as applied to the plaintiffs, who opposed the annexation of their neighborhood into the adjacent town, and who had raised less than $1,000 in monetary and in-kind contributions for their cause). By contrast, we are not aware of any decision invalidating a *contribution disclosure requirement*, either facially or as applied to a particular actor.

discretion. We cannot say, on this bare record, that the limits designated are wholly without rationality.

424 U.S. at 83.[11] This deference is not absolute, *see Randall v. Sorrell*, 548 U.S. 230, 248-49 (2006) (plurality opinion); *Canyon Ferry*, 556 F.3d at 1034, but it strongly reinforces our conclusion that Washington has chosen thresholds within a permissible range. This deference is all the more appropriate when, as here, the state's thresholds are comparable to those in other states.[12]

[8] In sum, §§ 42.17.090 and 390-16-34 are, as applied to ballot measure committees, "substantially related to a sufficiently important governmental interest." *Human Life*, 624 F.3d at 1005. They therefore survive exacting scrutiny.

## III.

The state argues that the district court erred by invalidating Washington Revised Code § 42.17.105(8) as applied to ballot measure committees. This provision imposes a $5,000 limit on contributions during the 21 days preceding a general election. All parties agree that the $5,000 limit would be unconstitutional if it applied without temporal restriction. *See Citizens Against Rent Control*, 454 U.S. at 299-300 (invalidating a city ordinance placing a $250 limitation on contributions to committees formed to support or oppose ballot measures). The

---

[11]In *Buckley*, the Court upheld a federal law requiring disclosure of contributions exceeding $100. The Court expressly declined to "reach the question whether information concerning gifts [between $10 and $100] can be made available to the public without trespassing impermissibly on First Amendment rights." *Buckley*, 424 U.S. at 84.

[12]Washington's $25 and $100 thresholds are within the range of disclosure requirements in other states. *See* McGeveran, *Mrs. McIntyre's Checkbook*, 6 U. Pa. J. Const. L. at 10 ("Almost all [states] require campaigns to itemize contributions below the federal threshold of $200. Eight states set thresholds as low as $20 or $25, and several others require reporting of all contributions, no matter what their size." (footnote omitted)).

only question, therefore, is whether Washington's contribution limit can survive constitutional scrutiny because it is limited to a 21-day period.

**[9]** The district court construed the 21-day contribution limit as a "ban on large contributions" and therefore applied strict scrutiny. Contribution limits, however, are not subject to strict scrutiny. They are constitutionally valid "if the State demonstrates a sufficiently important interest and employs means closely drawn to avoid unnecessary abridgment of associational freedoms." *Buckley*, 424 U.S. at 25; *see also Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 652 (9th Cir. 2007) (noting that limits on contributions to candidates and ballot measure committees are subject to the same level of scrutiny). We therefore ask whether § 42.17.105(8) is " 'closely drawn' to match a sufficiently important interest." *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1117 (9th Cir. 2011) (quoting *Randall*, 548 U.S. at 247).

## A. Sufficiently Important Interest

As noted, the state has an important interest in giving voters access to contributor information. The only question is whether the 21-day limit is closely drawn to advance that interest.

## B. Closely Drawn

The state argues that the rule is closely drawn because it is designed to force big-money contributors to identify themselves by the time the state mails ballots to voters — which takes place 18 days before the general election. The theory is that all voters should know who is paying for ballot measure campaigns by the time they cast their votes, and because voters have the option of voting before election day, this informational interest cannot be adequately protected unless large contributors make themselves known 21 days in advance of the election: "Given the timing of Washington's vote-by-mail

system, which encompasses the vast majority of voters in the state, and the timing of Wash. Rev. Code § 42.17.105(8), there is a substantial relation between the governmental interest and the timing of this disclosure provision." First Brief on Cross-Appeal 25.

[10] We disagree. As a threshold matter, we note that § 42.17.105(8) imposes a significant burden on First Amendment rights. In *Citizens Against Rent Control*, the Supreme Court recognized that contribution limits imposed on ballot measure committees burden both the freedom of association, by making it harder for individuals to "band together to advance their views on a ballot measure," and the freedom of speech, because a limit on contributions affects expenditures, "and limits on expenditures operate as a direct restraint on freedom of expression of a group or committee desiring to engage in political dialogue concerning a ballot measure." 454 U.S. at 296, 299. Washington's temporal limit is less burdensome than the permanent limit at issue in *Citizens Against Rent Control*, because ballot measure committees can arrange their fundraising around the 21-day limit with respect to planned contributions. *See Thalheimer*, 645 F.3d at 1122. Washington's limit nonetheless imposes a significant burden, because it limits contributions during the critical three-week period before the election, when political committees may want to respond to developing events. *See Human Life*, 624 F.3d at 1019 (recognizing "the unique importance of the temporal window immediately preceding a vote"); *cf. Anderson v. Celebrezze*, 460 U.S. 780, 786 (1983) (observing that early candidate filing deadlines prevent independent candidates from seizing "unanticipated political opportunities").**[13]** Section

---

**[13]**In decisions upholding temporal restrictions on otherwise protected political activities, the restrictions at issue generally did not apply to the period immediately preceding the election. In *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705 (4th Cir. 1999), the Fourth Circuit upheld a North Carolina law prohibiting political committees employing lobbyists from contributing to elected officials while the legislature was in

42.17.105(8) therefore imposes a significant burden on protected activity.

**[11]** We hold that § 42.17.105(8) is not closely drawn to provide voters with information they need to make informed choices. The limit is not reasonably necessary to inform vot-

---

session. *See id.* at 709. The court said that "North Carolina's restrictions do nothing more than place a temporary hold on appellees' ability to contribute during the General Assembly session, leaving them free to contribute during the rest of the calendar year and to engage in political speech for the entire year." *Id.* at 715. The rules advanced a compelling interest by preventing corruption and the appearance of corruption, and the restrictions were narrowly tailored because "they last only during the legislative session, which typically, though not invariably, has covered just a few months in an election year," and "cover only that period during which the risk of an actual quid pro quo or the appearance of one runs highest." *Id.* at 715-16. In *Thalheimer*, we upheld a San Diego ordinance making it unlawful for a candidate to solicit or accept contributions until the 12 months preceding the primary election for the office sought. *See* 645 F.3d at 1113-14. The rule did not impose a serious burden because candidates could concentrate their fundraising activities during the 12 months leading up to the election. *See id.* at 1122. In addition, the ban served an important governmental interest in the prevention of actual and perceived corruption "because those contributions made near an election are clearer expressions of political speech, whereas off-year contributions are more likely linked to business the donor has before the city, thus creating the appearance of quid pro quo 'corruption by the sale of influence.' " *Id.* at 1121. The rule was therefore closely drawn to a sufficiently important state anti-corruption interest. *See id.* at 1123. Both *N.C. Right to Life* and *Thalheimer* are distinguishable from this case because the temporal restrictions did not cover the final phase of the election.

In *Gable v. Patton*, 142 F.3d 940 (6th Cir. 1998), by contrast, the Sixth Circuit upheld a Kentucky rule prohibiting gubernatorial candidates not participating in the state's public financing system from accepting contributions during the 28 days preceding a primary or general election. *See id.* at 944. That temporal restriction applied to the critical pre-election period. The court upheld the provision, however, because it was necessary to the state's implementation of its public funding system. *See id.* at 949-50. Here, Washington has not shown that § 42.17.105(8) is closely drawn to achieve the state's informational interest, as we explain in text.

ers about large contributions made in the final three weeks of the election. As the district court found, "campaign contributions can be reported and made publicly available within minutes, and certainly within 24 hours." In fact, Washington already has in place a system requiring committees, during the 21 days preceding the election, to disclose contributions from large contributors within 48 or 24 hours of receiving them.[14]

It is true that some voters may choose to vote early, and they may not learn of some large contributions until they have already voted. The state certainly has an interest in assuring that all voters, including those who vote early, have the information they need to make informed choices. Voters who cast their ballots while the campaigning is still in full swing, however, make a voluntary choice to forgo relevant information that may come to light in the final weeks of the campaign. The state's interest in ensuring that these voters — the number of whom has not been identified — are maximally informed is therefore a weak one. It is outweighed by countervailing interests, including the right of ballot measure committees to raise and spend funds, the right of individuals to contribute funds to ballot measure committees and the interest of the voting public in the messages that those committees may convey in the final weeks of the election. Thus, as the district court said, "[t]he fact that voters have access to ballots earlier than before, and that they may choose to vote before all the election debate is in fact over, is not a sufficient reason to save th[e] statute."

Like the district court, we do not imply that a narrower restriction would suffer from the same infirmity. As the dis-

---

[14]Washington's disclosure law requires committees making and receiving contributions in excess of $1,000 during a "special reporting period" to file reports within 48 hours. *See* Wash. Rev. Stat. § 42.17.105(3). If a committee has already filed a "special report," any subsequent contributions from the same contributor must be filed within 24 hours, regardless of the subsequent contribution's size. *See id.* The 21 days before the election is a "special reporting period." *See id.* § 42.17.105(1)(a).

trict court noted: "Such a [restriction] may pass constitutional muster if limited to a time more carefully calculated to reflect the current time necessary to gather and organize and disseminate the relevant information about contributions and contributors that the government legitimately seeks to convey."

## IV.

**[12]** The district court properly concluded that Washington Revised Code § 42.17.090 and Washington Administrative Code § 390-16-034, the state's $25 and $100 disclosure requirements, are, as applied to ballot measure committees, substantially related to the important governmental interest in informing the electorate about the people and entities financing ballot measure committees. The court also properly invalidated Washington Revised Code § 42.17.105(8), the state's $5,000 contribution limit applicable to ballot measure committees during the 21 days preceding a general election. This provision is not closely drawn to match the state's important informational interest. The judgment of the district court accordingly is affirmed. Each party shall bear its own costs of appeal.

**AFFIRMED.**