# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 16-3696

_____

MCC Iowa, LLC, doing business as Mediacom

*Plaintiff - Appellant*

v.

City of Iowa City; ImOn Communications, LLC, formerly known as JB and SG
Communications, LLC

*Defendants - Appellees*

------------------------------

Charter Communications, Inc.

*Amicus on Behalf of Appellant(s)*

Iowa League of Cities

*Amicus on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: October 19, 2017
Filed: April 4, 2018

_____

Before GRUENDER and BENTON, Circuit Judges, and TUNHEIM,[1] District Judge.

_____

BENTON, Circuit Judge.

MCC Iowa, LLC, doing business as Mediacom, provides cable and telecommunications services in Iowa City. Mediacom sued the City of Iowa City and ImOn Communications, LLC. The district court[2] granted summary judgment to the City and ImOn. Mediacom appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Mediacom—the only cable provider in the City—has a franchise agreement with the City, as required by federal and state law. *See* **47 U.S.C. § 541(b)**; **Iowa Code § 477A.2(1)**. The agreement requires Mediacom to pay fees and provide cable services to almost all the City.

In 2015, ImOn—provider of cable and telecommunications in other Iowa cities—publicly stated an intent to provide services, including cable, in the City. The City Council passed three resolutions to facilitate ImOn's construction of a fiber-optic network, including access to public rights-of-way. The next month, ImOn began providing internet to City residents. The next year, it began providing telephone service. ImOn has not provided cable services in the City and has not applied for a

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

[2]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

cable franchise. It claims to have abandoned plans to provide cable services in the City.

Mediacom believed the City and ImOn were colluding to its disadvantage. In Iowa, if another cable provider applies for a franchise in a municipality, the incumbent provider (here, Mediacom) can apply for a *state* certificate of franchise authority for that municipality. **Iowa Code § 477A.2(6)**. This guarantees the incumbent provider the "same . . . terms and conditions" the new provider gets. *Id.*

Mediacom sued the City, later adding ImOn as a defendant. The lawsuit sought declarations that the resolutions were void and that the City could not permit a potential cable provider to construct a "cable system" without acquiring a cable franchise. Mediacom also alleged contract violations, tortious interference, civil conspiracy, and Equal Protection violations, all depending on whether ImOn could lawfully build a fiber-optic network without a franchise.

Both parties moved for summary judgment. Mediacom also moved for discovery. The district court denied the discovery motion and granted summary judgment to the City and ImOn. The court ruled that "ImOn is not presently required to seek a cable franchise" because it "is not now delivering cable programming."

This court reviews de novo the district court's grant of summary judgment. ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper if the court finds "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**.

II.

Title VI of the Communications Act requires a franchise only before providing cable service, not before constructing the infrastructure to provide it. "[A] cable

-3-

operator may not *provide* cable service without a franchise." **47 U.S.C. § 541(b)(1)** (emphasis added). But Mediacom argues that local franchising authorities (LFAs) may require a franchise earlier than federal law does. And Mediacom believes the City, as an LFA, did so in its Cable Television Franchise Enabling Ordinance:

> No person, firm, company, corporation or association shall *construct*, install, maintain or operate within any public street in the city, or within any other public property of the city, *any equipment or facilities for the distribution of cable service over a cable television system* or an open video system to any subscriber *unless a franchise authorizing the use of the streets or properties or areas has first been obtained* pursuant to the provisions of this chapter, and unless such franchise is in full force and effect.

**Iowa City Code § 12-4-6(A)** (emphasis added).

The Ordinance must be interpreted consistent with federal law. *See* **Iowa Code § 477A.11(1)** ("This chapter is intended to be consistent with [Title VI] . . . "); **Iowa City Code § 12-4-2** (adopting, almost word-for-word, Title VI's definition of "cable system" as the definition of "cable television system or cable system"). Mediacom's interpretation—requiring a franchise before construction of ImOn's fiber-optic network—is inconsistent with Title VI and an FCC order.[3]

Common carriers—as relevant here, companies providing telecommunications (internet and phone) service—are regulated under Title II of the Communications Act. **47 U.S.C. §§ 201-76**. Cable providers are regulated under Title VI of the Act.

---

[3]Because ImOn was a common carrier in Iowa City when it began construction, Mediacom's interpretation is also foreclosed by the Ordinance without reference to federal law. The Ordinance (like Title VI) expressly excludes from its definition of cable systems "a facility of a common carrier which is subject, in whole or in part, to the provision of title II of the [Communications Act], except . . . to the extent that such facility is used in the transmission of video programming . . . ." **Iowa City Code § 12-4-2**.

**§§ 521-73**. At one time, Title II and Title VI did not overlap because telecommunications and cable had different infrastructures. *See National Cable Television Ass'n, Inc. v. FCC*, 33 F.3d 66, 69 (D.C. Cir. 1994) (discussing the history of copper-wire, coaxial-cable, and fiber-optic technology). Today, "mixed-use" infrastructure—such as fiber-optic networks—can provide both telecommunications and cable. *See id.*

Title VI grants LFAs franchising authority over cable systems. *See* **§ 541(a)**. But this authority is limited. As relevant here, Title VI exempts common-carrier facilities regulated under Title II from the definition of "cable system" unless they are used to provide cable services:

> [T]he term "cable system" means a facility . . . designed to provide cable service . . . but such term does not include . . . (C) a facility of a common carrier which is subject, in whole or in part, to the provisions of [Title II], except that such facility shall be considered a cable system (other than for purposes of section 541(c)(2) of this title) to the extent such facility is used in the transmission of video programming directly to subscribers . . . .

**§ 522(7)**.

The FCC has stated:

> We clarify that LFAs' jurisdiction applies only to the provision of cable services over cable systems . . . [A]n LFA has no authority to insist on an entity obtaining a separate cable franchise in order to upgrade non-cable facilities. For example, assuming an entity (e.g., a LEC[4]) already possesses authority to access the public rights-of-way, an LFA may not require the LEC to obtain a franchise solely for the purpose of upgrading

---

[4]A "LEC"—"local exchange carrier"—is, as relevant here, a common carrier providing telephone service. *See* **47 U.S.C. § 153(32)**.

its network.[]  So long as there is a non-cable purpose associated with the network upgrade, the LEC is not required to obtain a franchise until and unless it proposes to offer cable services.  For example, if a LEC deploys fiber optic cable that can be used for cable and non-cable services, this deployment alone does not trigger the obligation to obtain a cable franchise.

**In re Implementation of Section 621(a)(1) of the Cable Communications Policy Act of 1984**, 22 F.C.C.R. 5101, 5155 (2007) (hereinafter **FCC order**).  *See also Illinois Bell Tel. Co. v. Village of Itasca*, 503 F. Supp. 2d 928, 937 (N.D. Ill. 2007) (holding that a company upgrading its telecommunications network to fiber-optic "is not a 'cable operator' under the terms of [Title VI] because it is not providing the transmission of video programming. Right now it is simply constructing a local distribution system capable of delivering video programming.").  *See generally Competitive Telecommc'ns Ass'n v. FCC*, 117 F.3d 1068, 1071 (8th Cir. 1997) (deference to FCC order interpreting Title II), *citing Chevron USA Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984).

Title VI, by itself, says that a common carrier's mixed-use facility is a cable system once the "facility is used" to provide cable services.  *See* **§ 522(7)(C)**; *MediaOne Grp., Inc. v. County of Henrico*, 257 F.3d 356, 364 (4th Cir. 2001) ("[Title VI] therefore contemplates that multi-purpose facilities will receive different regulatory classification and treatment depending on the service they are providing at a given time." (citing **§ 522(7)(C)**)).  As the FCC order says, LFAs must have franchise authority before actual use, *i.e.*, when a company "proposes" to provide cable services. *See* **FCC order**, 22 F.C.C.R. at 5155.  Together, Title VI and the FCC order establish that LFAs may regulate a common carrier's mixed-use facilities consistent with Title VI only when the operator provides or proposes to provide cable services.  Because ImOn has not provided or proposed to provide cable services, deployment of its mixed-use, fiber-optic network does not require it to obtain a cable franchise.

Mediacom argues that neither § 522(7)(C) nor the FCC order applies here, where a common carrier constructing a mixed-use, fiber-optic network was *not then* providing telecommunications in the area. But § 522(7)(C) and the FCC order apply to a common carrier's facilities "subject . . . to" Title II, regardless whether they have yet been used to provide telecommunications services. *See* **§ 522(7)(C)**; **FCC order** at 5155 ("[D]eployment [of mixed-use facilities] alone does not trigger the obligation to obtain a cable franchise."). Mediacom's argument conflicts with the FCC order's stated objective of alleviating the "unreasonable barrier to entry [caused by the previous franchising process] that impedes the achievement of the interrelated federal goals of enhanced cable competition and accelerated broadband deployment." **FCC order**, 22 F.C.C.R. at 5102. *See also* **id.** at 5103 ("We believe this competition for delivery of bundled services will benefit consumers by driving down prices and improving the quality of service offerings. We are concerned, however, that [competitors] seeking to enter the video market face unreasonable regulatory obstacles, to the detriment of competition generally and cable subscribers in particular."). This objective implements Title II and Title VI. *See* **47 U.S.C. § 253(a)** ("No State or local statute or regulation . . . may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service."); **§ 541(b)(3)(B)** ("A franchising authority may not impose any requirement under this subchapter that has the purpose or effect of prohibiting, limiting, restricting, or conditioning the provision of a telecommunications service by a cable operator . . . .").

Mediacom argues that ImOn "proposed" to provide cable service when its CEO "publicly conveyed ImOn's intent to offer cable TV services in Iowa City." But Mediacom conflates "proposes" with "intends." *Compare* "propose," **Webster's Dictionary** 1819 (unabridged 3d ed. 1961) ("to offer for consideration, discussion, acceptance, or adoption"), *with* "intend," **Webster's Dictionary** 1175 (unabridged 3d

ed. 1961) ("to have in mind as a design or purpose"). In the FCC order, the term "propose" means "apply for a cable franchise." *See* **FCC order**, 22 F.C.C.R. at 5139 ("[I]f an LFA has not made a final decision within the time limits . . . the LFA will be deemed to have granted the applicant an interim franchise based on the terms *proposed* in the application." (emphasis added)); *id.* at 5138 (cable franchise applications must contain information including "the geographic area that the applicant *proposes* to serve," and "the applicant's *proposed* PEG channel capacity" (emphasis added)). While ImOn stated an intent to provide cable service in the City, it never proposed to do so.

Mediacom also believes that the City, before granting access to public rights-of-way, should be required to ask how entities intend to use them. If the entity intends, as ImOn stated, to use them for cable services, Mediacom argues, the entity must obtain a cable franchise.

Mediacom relies on *San Juan Cable LLC v. Telecommunications Regulatory Board of Puerto Rico*. There, a company had applied for a cable franchise, but before the approval of its application, wanted to construct and operate (mixed-use) facilities in a "trial phase." 598 F. Supp. 2d 233, 234-35 (D.P.R. 2009). The company, citing the FCC order, argued that the franchise requirement was not triggered because it had not "propose[d] to offer cable services." *Id.* at 236. The district court disagreed:

> [The FCC] did not hold . . . that just because a telephone company uses the same cable system for a different activity, it should be exempt from complying with [Title VI]'s franchise requirement where, as in the present case, such company intends to upgrade existing facilities in order to make the provision of cable services viable.

*Id.* at 237.

*San Juan Cable* does not support Mediacom's investigate-intent requirement. First, the company there had already applied for a franchise and was attempting "to perfect [its] cable system before approval of the franchise." *Id.* at 238. Thus, the company had proposed to provide cable services. *See id.* at 237 ("[The company] would have this court believe that it does not 'propose to offer cable services,' when it is precisely for that reason that it wishes to conduct a beta-testing trial of its system."). Second, the district court found that the company's "trial phase" was "the provision of cable services" under Title VI. *See id.* at 237 n.2 ("What is before the court is a petition . . . to bar the Regulatory Board from allowing [the company] to use such facilities for the provision of cable services if and until it acquires a franchise as required by federal law, nothing more."); *id.* at 236 ("[T]he court finds that [the company] is indeed offering a 'cable service,' as defined in [Title VI], through the implementation of its limited test trial."). Here, Imon has not proposed a trial phase or to provide cable services without a franchise.

In the alternative, Mediacom argues that the City granted ImOn a de facto cable franchise that failed to comply with the franchise requirements of Title VI and Iowa law. *See, e.g.*, **Iowa Code § 364.2(4)(g)** ("If a city grants more than one cable television franchise, the material terms and conditions of any additional franchise shall not give undue preference or advantage to the new franchisee."). According to Mediacom, because the City knew ImOn's intent to provide cable services and issued resolutions allowing construction of mixed-use equipment, the resolutions were a cable franchise.

But this is not true as a matter of state or federal law. Cities in Iowa have general authority over rights-of-way, subject to state and federal limits. *See* **Iowa Code § 364.1** ("A city may," except as provided in Iowa law, "exercise any power and perform any function it deems appropriate . . . ."); *City of Hawarden v. US West Commc'ns, Inc.*, 590 N.W.2d 504, 506 (Iowa 1999) (cities have "the authority to

regulate a utility's use of streets, highways, rights-of-way and other public grounds within the city limits to the extent not inconsistent with federal communication law or [Iowa law]").  The federal and state limits that Mediacom cites apply to *cable* "franchises," defined as:

> an initial authorization . . . issued by a franchising authority, whether such authorization is designated as a franchise, permit, license, resolution, contract, certificate, agreement, or otherwise, which authorizes the construction or operation of a *cable system*.

**47 U.S.C. § 522(9)** (emphasis added); *see also* **Iowa Code § 477A.1(7)** (nearly identical).

As discussed, ImOn's fiber-optic network is not a "cable system," because ImOn has not provided or proposed to provide cable services.  Thus, the agreements authorizing ImOn's construction of a fiber-optic network are not a de facto cable franchise.

IV.

In its Equal Protection claim, Mediacom argues it is similarly situated to ImOn. Mediacom cites *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 639 (5th Cir. 2012), where a law favored new cable providers over a "small and identifiable number of [incumbent] cable providers."  The constitutional injury stemmed from the differing treatment of similarly situated *cable providers*.  Here, the district court properly concluded that ImOn and Mediacom are not similarly situated because only Mediacom is a cable provider in the City.

Finally, Mediacom asserts that the district court abused its discretion in denying Mediacom's motion for discovery.  *See **Toben v. Bridgestone Retail Ops.,***

*LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (denial of a discovery motion is reviewed for abuse of discretion). Mediacom alleges there are disputed fact issues requiring discovery, including: whether ImOn intended to provide cable services despite its public retraction; whether ImOn was offering telecommunications services in the City before entering the agreements with the City; and whether ImOn's system is fully cable-ready. Because this court has assumed all facts favorably to Mediacom, the district court did not abuse its discretion in denying further discovery and granting summary judgment for ImOn and the City.

*******

The judgment is affirmed.

_____