# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1314
_____

Missourians for Fiscal Accountability

*Plaintiff - Appellee*

v.

James Klahr, in his official capacity as Executive Director of the Missouri Ethics Commission

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: February 13, 2018
Filed: June 12, 2018

_____

Before LOKEN, BENTON, and ERICKSON, Circuit Judges.

_____

BENTON, Circuit Judge.

James Klahr, in his official capacity as Executive Director of the Missouri Ethics Commission (MEC), appeals the order of the district court[1] declaring unconstitutional and enjoining enforcement of Missouri's 30-day formation deadline

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

for campaign committees, Missouri law section 130.011(8).[2]  *See Missourians for Fiscal Accountability v. Klahr*, No. 14-4287-CV-ODS, 2017 WL 58588 (W.D. Mo. Jan. 5, 2017).  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Under Missouri campaign finance law, chapter 130, a "committee" is "a person or any combination of persons, who accepts contributions or makes expenditures for the primary or incidental purpose of influencing or attempting to influence the action of voters for or against" candidates or ballot measures.  **§ 130.011(7)**.  Exempt are those not crossing thresholds, such as: (1) any non-candidate individual "who accepts no contributions and . . . deals only with the individual's own funds or property;" and (2) any "person or combination of persons, if neither the aggregate of expenditures made nor the aggregate of contributions received during a calendar year exceeds five hundred dollars and if no single contributor has contributed two hundred fifty dollars of such aggregate contributions."  **§ 130.011(7)(a)**.

Chapter 130 distinguishes committees by the political activity they engage in.  At issue here are "campaign committees":

> a committee, other than a candidate committee, which shall be formed by an individual or group of individuals to receive contributions or make expenditures and whose sole purpose is to support or oppose the qualification and passage of one or more particular ballot measures in an election . . . , such committee shall be formed no later than thirty days prior to the election for which the committee receives contributions or makes expenditures, and which shall terminate the later of either thirty days after the general election or upon the satisfaction of all committee debt after the general election . . . .

**§ 130.011(8)**.

---

[2]All statutory citations are to RSMo Supp. 2013, unless otherwise indicated.

-2-

Committees must have a treasurer, maintain an "official depository account," and keep accurate records. **§§ 130.021.1**, **130.021.4(1)**, **130.036.1**. Committees "shall file a statement of organization . . . within twenty days after the person or organization becomes a committee but no later than the date for filing the first [disclosure] report . . . ." **§ 130.021.5**. The statement includes, among other things, the committee's name and address, the kind of committee, and the candidate or ballot measure supported or opposed. *Id.*

Committees must file "disclosure report[s] of receipts and expenditures." **§ 130.041.1**. Disclosure reports are due: (1) "Not later than the eighth day before an election for the period closing on the twelfth day before the election if the committee has made any contribution or expenditure either in support or opposition to any candidate or ballot measure;" (2) "Not later than the thirtieth day after an election for a period closing on the twenty-fifth day after the election, if the committee has made any contribution or expenditure either in support of or opposition to any candidate or ballot measure . . . ;" and (3) "Not later than the fifteenth day following the close of each calendar quarter." **§ 130.046.1**. The Missouri Ethics Commission (MEC) makes statements of organization and disclosure reports available to the public on its website in accordance with section 130.057.

"Any person who purposely violates the provisions of [chapter 130] is guilty of a class A misdemeanor." **§ 130.081.1**. However, failure "to file any report or statement . . . within the time periods specified in [chapter 130]" is "an infraction." **§ 130.081.2**. *See* **§ 556.021.2** ("An infraction does not constitute a crime . . . ."). "Any person who knowingly accepts or makes a contribution or makes an expenditure in violation of any provision of this chapter . . . shall be held liable to the state in civil penalties in an amount equal to any such contribution or expenditure." **§ 130.072**.

Individuals may file complaints with the MEC alleging chapter 130 violations. **§ 105.957.1(3)**. "When the commission concludes . . . that there are reasonable grounds to believe that a violation of any criminal law has occurred, and if the

commission believes that criminal prosecution would be appropriate . . . the commission shall refer the report" for criminal prosecution. **§ 105.961.2**. The MEC may also "initiate formal judicial proceedings seeking to obtain" an order to "[c]ease and desist violation of . . . chapter 130" or "[p]ay any civil penalties required by . . . chapter 130." **§ 105.961.5**. Finally, the MEC has, "[t]hrough reconciliation agreements or civil action, the power to seek fees for violations in an amount not greater than one thousand dollars or double the amount involved in the violation." **§ 105.961.4(6)**.

## II.

Thirteen days before the November 2014 general election, a group formed Missourians for Fiscal Accountability (MFA) as a campaign committee, wanting to accept contributions and make expenditures in support of Proposition 10. MFA sued to enjoin enforcement of the formation deadline, arguing that it violated the First Amendment. The district court granted MFA a temporary restraining order. MFA then received contributions and made expenditures in the days before the election.

After the election, MFA terminated as a campaign committee. The district court dismissed the suit on ripeness grounds. This court reversed and remanded, finding standing, ripeness, and no mootness. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 793-97 (8th Cir. 2016).

On remand, the district court granted summary judgment to MFA. According to the court, the formation deadline created a "blackout period" that Missouri could not justify under strict or exacting scrutiny. *Missourians for Fiscal Accountability*, 2017 WL 58588, at *2-4. The MEC appeals.

"This court reviews de novo the district court's grant of summary judgment." *MCC Iowa, LLC v. City of Iowa City*, 887 F.3d 370, 372 (8th Cir. 2018). Because

-4-

MFA seeks declaratory and injunctive relief that would "reach beyond the particular circumstances" here, it brings a facial challenge. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010). To succeed, MFA must "establish that no set of circumstances exists under which [the formation deadline] would be valid;" "that [the formation deadline] lacks any plainly legitimate sweep;" or that it is "overbroad" because "a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep." *Phelps-Roper v. Ricketts*, 867 F.3d 883, 891-92 (8th Cir. 2017) (last alteration in original), *citing United States v. Stevens*, 559 U.S. 460, 472 (2010).

## III.

"Independent expenditures are indisputably political speech, and any restrictions on those expenditures strike 'at the core of our electoral process and of the First Amendment freedoms.'" *Minnesota Citizens Concerned for Life v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (en banc), *quoting Buckley v. Valeo*, 424 U.S. 1, 39 (1976). "Because political [s]peech is an essential mechanism of democracy, the means to hold officials accountable to the people, a precondition of enlightened self-government and a necessary means to protect it, political speech must prevail against laws that would suppress it, whether by design or inadvertence." *Id.* at 871 (internal quotation marks omitted) (alteration in original), *quoting Citizens United v. FEC*, 558 U.S. 310, 339-40 (2010).

The formation deadline makes it unlawful to form a campaign committee within 30 days of the election. *See* **§ 130.011(8)** (a campaign committee "shall be formed no later than thirty days prior to the election"). An individual or group must form a campaign committee[3] to speak in support of or opposition to a particular ballot

---

[3]"Continuing committees" may also support or oppose ballot measures. *See* **§ 130.011(10)**. But for present purposes, continuing committees are not an adequate alternative, because they must be formed *60 days* before the election. *See id.*

-5-

measure. *See* **§§ 130.011(7)** ("a person or combination of persons, who accepts contributions or makes expenditures" to influence the action of voters is a "committee"); **130.011(8)** (a "campaign committee" is a "committee" that "shall be formed . . . to receive contributions or make expenditures . . . to support or oppose . . . one or more particular ballot measures"); **130.072** (contributions or expenditures in violation of chapter 130 are subject to civil penalties). Thus, the formation deadline prohibits those who do not form a campaign committee 30 days before the election from speaking.

"When [a state] restricts speech, [it] bears the burden of proving the constitutionality of its actions." *McCutcheon v. FEC*, 134 S. Ct. 1434, 1452 (2014) (plurality opinion), *quoting United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). "Generally, [l]aws that burden political speech are subject to strict scrutiny . . . ." *Minnesota Citizens Concerned*, 692 F.3d at 874 (internal quotation marks omitted) (alteration in original), *quoting Citizens United*, 558 U.S. at 340.

The MEC argues that strict scrutiny does not apply, because the formation deadline is a disclosure law. "[D]isclosure laws are subject to exacting scrutiny, because they 'impose no ceiling on campaign-related activities and do not prevent anyone from speaking.'" *Iowa Right to Life Comm., Inc. v. Tooker*, 717 F.3d 576, 589-90 (8th Cir. 2013), *quoting Citizens United*, 558 U.S. at 366. "To determine whether a rule is a disclosure requirement, or something more, [this court looks] to see the effect of the provision." *Catholic Leadership Coalition of Texas v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014). "Allowing states to sidestep strict scrutiny by simply placing a 'disclosure' label on laws . . . risks transforming First Amendment jurisprudence into a legislative labeling exercise." *Minnesota Citizens Concerned*, 692 F.3d at 875.

Disclosure laws generally require registration, reporting information, or keeping necessary records. *See John Doe*, 561 U.S. at 194 (requiring "disclosure of signatory

information on referendum petitions"); *Citizens United*, 558 U.S. at 366 (requiring a "disclaimer" and a "disclosure statement"); *Davis v. FEC*, 554 U.S. 724, 730-31 (2008) (requiring a "declaration of intent," and "notifications"); *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 204 (1999) (requiring the "[l]isting [of] paid circulators and their income from circulation"); *Buckley*, 424 U.S. at 60-63 (requiring registration, recordkeeping, and reporting). *See also Catholic Leadership Coalition*, 764 F.3d at 426 ("Disclosure and disclaimer rules require the provision of information, and only incidentally prevent speech when the speaker is unwilling to provide the additional required information."); *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 137 (2nd Cir. 2014) ("[R]egistration, recordkeeping necessary for reporting, and reporting requirements . . . amount to the establishment of a disclosure regime.").

Laws requiring committees to take organizational steps are also generally treated as disclosure laws. *See Catholic Leadership Coalition*, 764 F.3d at 439 ("[T]he treasurer-appointment requirement *is* a disclosure requirement: all that the provision requires is that a general-purpose committee take simple steps to formalize its organizational structure and divulge additional information to the government." (emphasis in original)); *Worley v. Florida Secretary of State*, 717 F.3d 1238, 1241-45 (11th Cir. 2013) (regulations requiring committees to "appoint a treasurer and establish a campaign depository" are subject to exacting scrutiny); *The Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544, 548-49 (4th Cir. 2012) ("disclosure and organizational requirements" are "not as burdensome on speech as are limits imposed on campaign activities or limits imposed on contributions to and expenditures by campaigns"), *SpeechNow.org v. FEC*, 599 F.3d 686, 697 (D.C. Cir. 2010) (en banc) ("the requirement to organize as a political committee as soon as it receives $1000" is subject to exacting scrutiny). *Cf. Minnesota Citizens Concerned*, 692 F.3d at 875 n.9 (questioning whether exacting scrutiny applied, but applying it to "disclosure laws" and "[o]ther requirements, such as requiring a treasurer, segregated funds, and record-keeping" that are "related to disclosure").

The MEC argues that the formation deadline is a disclosure law because it merely requires formation. To the contrary, the unchallenged language of section 130.011(8) requires that if a committee's "sole purpose is to support or oppose . . . one or more particular ballot measures," a campaign committee "shall be formed . . . to receive contributions or make expenditures." In addition to requiring formation, the formation deadline *prohibits* formation—the precondition to speak—within 30 days of the election. Thus, the formation deadline is not a disclosure law because it prohibits speech even if the individual or group is willing to register, report information, keep necessary records, and take organizational steps. *See **Pursuing America's Greatness v. FEC***, 831 F.3d 500, 507-08 (D.C. Cir. 2016) (a rule about what a committee may name itself is not a disclosure requirement, because it "prevent[s] [the speaker] from conveying information to the public," even though the speaker "has provided all the information that the [laws] require"); ***Catholic Leadership Coalition***, 764 F.3d at 427 ("The 60-day, 500-dollar limit [is not a disclosure requirement, because it] places a ceiling on speech for sixty days even if a committee is willing to comply with all disclosure/disclaimer requirements . . . ."); ***Family PAC v. McKenna***, 685 F.3d 800, 811-12 (9th Cir. 2012) ("$5,000 limit on contributions during the 21 days preceding a general election" is subject to greater than exacting scrutiny). *Cf. **Citizens United***, 558 U.S. at 319 ("The Government may regulate corporate political speech through disclaimer and disclosure requirements, but it may not suppress that speech altogether.").

The MEC insists that it allows late formation and enforces the formation deadline by imposing only a $1,000 fee (part of which will be stayed pending further violations). *See **Missourians for Fiscal Accountability***, 830 F.3d at 797 (describing the MEC's policy of accepting late formation and imposing only a fee). According to the MEC, a late-formed campaign committee can then speak without further violating chapter 130. The MEC invokes the canon of constitutional avoidance in favor of its interpretation. *See **McFadden v. United States***, 135 S. Ct. 2298, 2307

(2015) ("[T]his canon is a tool for chosing between competing plausible interpretations of a provision." (internal quotation marks omitted)).

First, the MEC is not required to allow late formation or limited to imposing fees. Forming within 30 days of the election violates the formation deadline's command that a campaign committee "shall be formed no later than thirty days prior to the election." **§ 130.011(8)**. The MEC admits this by imposing fees under its "power to seek fees for *violations* . . . ." *See* **§ 105.961.4(6)** (emphasis added). Purposeful violations of chapter 130 are class A misdemeanors. **§ 130.081**. The MEC could refer the matter for criminal prosecution or seek a cease-and-desist order. *See* **§ 105.961.2**, **.5**. This court does not expect individuals or groups "to rely on [the MEC's] informal assurance that it would not enforce the plain meaning of the statute." *See* ***Minnesota Citizens Concerned***, 692 F.3d at 873 n.8.

Second, even assuming late-formers can expect only the fee, this does not make the formation deadline a disclosure requirement. A $1,000 fee is a significant burden, considering that a group must form a committee if its expenditures exceed $500. *See* **§ 130.011(7)(a)**. Also, the fee is issued in a Consent Order finding probable cause that the committee and its treasurer violated chapter 130. *See* ***Missourians for Fiscal Accountability***, 830 F.3d at 797 (public links to past Consent Orders). This public reprimand could damage a campaign committee's speech and denigrate its officers and members. Under the MEC's interpretation, while the formation deadline may not flatly prohibit speech within 30 days, it gives individuals or groups a choice: (1) speak, violating the law and incurring a fee and public reprimand; or (2) limit speech below the thresholds. The Supreme Court applies greater than exacting scrutiny in similar situations. *See **Davis***, 554 U.S. at 738-40 (applying strict scrutiny to a law that "does not impose a cap on a candidate's expenditure of personal funds," because it gives candidates "two choices: abide by a limit on personal expenditures or endure the burden that is placed on that right by the activation of a scheme of discriminatory contribution limits"); ***Arizona Free Enterprise Club v. Bennett***, 564 U.S. 721, 740-43

-9-

(2011) (applying *Davis* to a similar law and rejecting the argument that "any burden . . . is . . . analogous to the burden placed on speakers by the disclosure and disclaimer requirements . . . upheld in *Citizens United*" as "not even close"). The fact that some may choose to speak despite the formation deadline "does not make [it] any less burdensome." *See Arizona Free Enterprise*, 564 U.S. at 745 ("If the state made privately funded candidates pay a $500 fine to run as such, the fact that candidates might choose to pay it does not make the fine any less burdensome."); *Davis*, 554 U.S. at 739 ("Many candidates . . . may choose to do so despite [the rule], but they must shoulder a special and potentially significant burden if they make that choice").

The MEC invokes this court's opinion in *National Right to Life Political Action Committee v. Connor*. There, this court held that a similar deadline for continuing committees "does not, on its face, limit issue or express advocacy within thirty days of an election; it merely states a registration deadline." 323 F.3d 684, 693 (8th Cir. 2003). But *Connor* addresses only ripeness and says nothing about the merits or proper level of scrutiny. *Id.* *See Missourians for Fiscal Accountability*, 830 F.3d at 797 ("This court [in *Connor*] concluded that a continuing committee's claim was not ripe because it presented neither evidence 'on the issue of fees' nor pursued an advisory opinion from the MEC or a temporary restraining order."). In any event, the fact that a statute does not limit speech *on its face* does not mean that it is a disclosure requirement. While a formation deadline by itself might not expressly limit speech, the formation deadline here is more than a disclosure requirement because it prohibits (or significantly burdens) formation of a campaign committee, a requisite for legally engaging in speech, even if the individual or group is willing to comply with organizational and disclosure requirements.

Finally, the MEC argues that the formation deadline is a disclosure requirement because it prevents "circumvent[ion]" of, or encourages compliance with, chapter 130's disclosure regime. But as the Fifth Circuit says, this does not make it a disclosure requirement: "A complete ban on political speech would certainly prevent

circumvention of [the] disclosure regime, but no one would suggest that it is a disclosure regulation." *See* **Catholic Leadership Coalition**, 764 F.3d at 427.

IV.

Strict scrutiny "requires the [g]overnment to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." **Minnesota Citizens Concerned**, 692 F.3d at 874 (internal quotation marks omitted) (alteration in original), *quoting* **Citizens United**, 558 U.S. at 340. The Supreme Court "has identified only one legitimate governmental interest for restricting campaign finances: preventing corruption or the appearance of corruption." **McCutcheon**, 134 S. Ct. at 1450. The MEC does not assert this interest. *Cf.* **First National Bank of Boston v. Bellotti**, 435 U.S. 765, 790 (1978) ("The risk of corruption perceived in cases involving candidate elections . . . simply is not present in a popular vote on a public issue." (internal citations omitted)). Instead, the MEC asserts an interest in preventing circumvention of chapter 130's disclosure regime.

Assuming, without deciding, that this interest is compelling, the formation deadline is unconstitutional because it is not narrowly tailored. The formation deadline indiscriminately prohibits (or significantly burdens) speech by individuals or groups who did not form a campaign committee by the 30-day deadline. This would be less burdensome if all individuals and groups knew well in advance that they would eventually want to speak. But as the Supreme Court has recognized, this is not the case:

> [T]he public begins to concentrate on elections only in the weeks immediately before they are held. There are short timeframes in which speech can have influence. The need or relevance of the speech will often first be apparent at this stage in the campaign. The decision to speak is made in the heat of political campaigns, when speakers react to messages conveyed by others.

-11-

***Citizens United***, 558 U.S. at 334. *See **FEC v. Wisconsin Right to Life***, 551 U.S. 449, 462 (2007) ("groups . . . cannot predict what issues will be matters of public concern . . . ."); ***Family PAC***, 685 F.3d at 812 ("Washington's limit [] imposes a significant burden, because it limits contributions during the critical three-week period before the election, when political committees may want to respond to developing events.").

In Missouri, individuals may not learn of ballot measures until days before the election. Once the ballot is finalized, the secretary of state sends election authorities the notice of the measures to be voted on. *See* **§ 116.240**. The local election authority publishes the notice in local newspapers, with the first publication generally occurring less than 30 days before the election. *See* **§§ 116.250-60**, **115.127.2**.

True, an effect of the 30-day formation deadline is that campaign committees' statements of organization are generally due 10 days before the election. *See* **§ 130.046** (statements of organization due 20 days after "becom[ing] a committee"). The MEC argues this is important, because it ensures that voters know who is speaking before the election. But even without the formation deadline, all campaign committees active 12 days before the election must file a statement of organization (and a disclosure report) eight days before the election. *See* **§§ 130.046.1(2)**, **130.021.5**. *See also* **§ 130.044.1** (campaign committees that receive a $5,000 donation from any single contributor must "electronically report [that contribution] to the [MEC] within forty-eight hours," regardless when it is received).

Due to its burden on speech and its modest effect on preventing circumvention of the disclosure regime, the formation deadline is not narrowly tailored. *See **Catholic Leadership Coalition***, 764 F.3d at 433 (60-day, 500-dollar limit is not closely drawn to "prevent[] circumvention of its disclosure requirements"); ***Family PAC***, 685 F.3d at 813 (prohibition on contributions above $5,000 within 21 days of a general election "is not closely drawn to provide voters with information they need to make informed choices"). Thus, it is facially unconstitutional as at least "overbroad." *See **Phelps-Roper***, 867 F.3d at 892

No other part of section 130.011(8) or chapter 130 need be invalidated here, because the formation deadline is severable. This court "look[s] to state law to determine the severability of a state statute." ***Phelps-Roper v. Koster***, 713 F.3d 942, 953 (8th Cir. 2013). Missouri statutes generally—and chapter 130 specifically—are severable unless "the valid provisions . . . are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless . . . the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent." **§ 1.140**. *See* **§ 130.096** ("[T]he provisions of [chapter 130] are declared severable."). No exception applies here.

The district court did not err in granting summary judgment for MFA.

\*\*\*\*\*\*\*

The judgment is affirmed.

_____